The STATE of Texas, Appellant,

v.

**Jade Michael CANTWELL, Appellee.**

No. 10–01–371–CR.

Court of Appeals of Texas,
Waco.

Aug. 21, 2002.

---

**2.** The State also argues that Johnson had probable cause to search the car. We do not address that argument.

Steve Robertson, Robertson, Robertson & Silas, Clifton, for Appellee.

B.J. Shepherd, Bosque County District Attorney, Martin L. Peterson, Bosque County Assistant District Attorney, Meridian, for Appellant.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## MEMORANDUM OPINION

BILL VANCE, Justice.

Jade Michael Cantwell was indicted for possession of marihuana, a state jail felony. He filed a motion to suppress all evidence seized during what he alleged was an illegal search of himself and his residence. In a separate proceeding, the State had attempted to have $1,160 found in Cantwell's possession forfeited as proceeds from the sale of marihuana. TEX. CODE CRIM. PROC. ANN. ch. 59 (Vernon 1979 & Supp. 2002). After a hearing in the forfeiture proceeding, the court denied the State's request for a forfeiture because the court found the search and seizure were illegal. At the hearing on the suppression motion, the court, without hearing additional testimony and with the parties' approval, took judicial notice of the testimony in the forfeiture proceeding

and again found the search and seizure illegal. Appealing from the order granting the motion to suppress the evidence, the State asserts in a single issue: (1) the court abused its discretion in granting the motion; and (2) the evidence should be available for the State's use at trial to corroborate Cantwell's "confession" when he testified at the civil forfeiture hearing. *Id.* art. 44.01(a)(5) (Vernon Supp. 2002).

## RULING ON THE MOTION TO SUPPRESS EVIDENCE

The State first argues that the court abused its discretion when it granted Cantwell's motion to suppress evidence seized from him in a "pat-down" search and from the residence as a direct result of that search.

### *Standard of Review*

■ A defendant who seeks to suppress evidence because of an illegal search that violates the federal or state constitution bears the initial burden to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986). The burden is met by proving that the police seized him or performed a search without a warrant. *Id.* Once the defendant establishes (1) that a search or seizure occurred and (2) that no warrant was obtained, the burden shifts to the State to produce either evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *Id.*

■ Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). The ruling will be overruled only if outside the bounds of reasonable disagreement. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App.1996). A ruling will not be reversed on appeal, even if made

for the wrong reason, if the ruling is supported by the record and correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996).

■ At a suppression hearing, the trial judge is the sole finder of fact. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex.Crim.App. 1993). The judge is free to believe or disbelieve any or all of the evidence presented. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

■ For search and seizure issues, we engage in a mixed review: We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor while we review de novo application-of-law-to-fact questions that do not turn upon credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652 (Tex. Crim.App.2002) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). In the absence of explicit findings, we assume the trial court made whatever appropriate implicit findings are supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000) (citing *Guzman*, 955 S.W.2d at 89–90). We review the evidence in a light most favorable to the trial court's ruling. *Id.* (citing *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999)).

Here, the court made no express findings, so we defer to such implicit findings as are supported by the record and buttress the ruling granting the motion to suppress the evidence.

### *Facts*

Cantwell and Heather Langley lived together at a residence in Laguna Park. On May 18, 2001, they were at home when Bosque County Sheriff's Deputy Jim Tur-

ner, responding to a dispatch, came to their home. Cantwell, Langley, and Turner all testified at the suppression hearing. Their testimony is consistent on these relevant points:

- Seeing a door off its hinges and laying on the deck, Turner entered the residence without knocking or announcing his presence;
- Turner drew his service revolver before entering the residence;
- Cantwell and Langley were in a back bedroom;
- Turner's first action upon entering the bedroom was to identify himself, point his weapon at Cantwell, and make him stand and face a wall;
- No weapons were present, other than Turner's;
- No contraband was in view.

Turner testified he asked Langley if she was hurt, and she said, "no"; he asked her if anything was wrong, and she said "no." Cantwell and Langley did not testify about any conversation in the bedroom between Turner and Langley. The testimony conflicts about (a) which door Turner entered to get into the residence, (b) exactly what Cantwell and Langley were doing and how loudly they were talking, and (c) what Turner said to Cantwell as he pointed his weapon at him. After he determined that Langley was not injured and that nothing was wrong in the residence, Turner holstered his weapon and began to search Cantwell. Turner testified that he "[f]elt a large plastic what I felt was a—at the time was a—something out of the ordinary, possibly marihuana in his pocket, in the left-hand front pocket." It felt "[l]arge and kind of crumply." He said he recognized the feel from other incidents in which he discovered a bag of marihuana in someone's pocket. He pulled the bag partially out, which he observed to contain marihuana, and then he pushed it back into Cantwell's pocket. Turner handcuffed Cantwell and took him into the living room, placing him face down on the floor. He had Langley sit on the sofa.

When three more officers then arrived at the residence, Turner showed the bag of marihuana to them. He told them, "[W]e are going to need-probably need to search the place." Inside one cabinet, officers found another bag of marihuana plus three empty bags with marihuana residue. In another cabinet, officers found an empty bag and a set of scales. Finally, officers found $1,600 in Cantwell's wallet.

### The Ruling

■ In denying the State's request for forfeiture, the court said: "I don't for a minute believe that Mr. Cantwell and Ms. Langley weren't raising hell at the time [Turner] got there, and that there wasn't still some disturbance going on, and I wouldn't have wanted the officer to stop at the door and wait until he could get a search warrant. I don't think that's the law." But the court continued: "[B]ut once he gets in there and he determines that nobody's hurt and that there's nothing that's in danger at that point I think he's got to back out."

■ The trial judge found Turner's entry into the residence to be justified, and we agree. An officer may enter a residence without a warrant if the officer reasonably believes that a person within the premises is in need of immediate help. *See Brimage v. State*, 918 S.W.2d 466, 482 (Tex.Crim.App.1996) (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978)). The officer must have probable cause, *i.e.*, he must have an objectively reasonable belief that an emergency exists, and therefore it is impracticable to obtain a warrant. *Id.* Because such a situation faced Turner when he arrived at the residence, his entry

into Cantwell's residence was justified under the Emergency Doctrine. We turn, then, to a consideration of whether the court abused its discretion when it ruled against the validity of the pat-down search. We limit our analysis to the Fourth Amendment argument presented by the State.

Searches conducted without a warrant are unreasonable *per se* under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *O'Hara v. State*, 27 S.W.3d 548, 550 (Tex.Crim.App.2000) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One exception to the warrant requirement occurs when an officer is justified in believing that an individual is armed and presently dangerous. *Id.* In that situation, the officer may conduct a pat-down search to determine whether the person is carrying a weapon. *Id.* (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993)). It would be unreasonable to deny a police officer the right to neutralize the threat of physical harm. *Id.* (citing *Michigan v. Long*, 463 U.S. 1032, 1034, 103 S.Ct. 3469, 3473, 77 L.Ed.2d 1201 (1983)). A pat-down search is substantially less intrusive than a standard search requiring probable cause. *Id.* (citing *Michigan v. Summers*, 452 U.S. 692, 697–98, 101 S.Ct. 2587, 2591–92, 69 L.Ed.2d 340 (1981)). Before conducting a pat-down search, an officer need only be able to "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 550–51 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The Supreme Court has been "careful to maintain" the "narrow scope" of the pat-down exception. *Id.* at 551 (citing *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 343,

62 L.Ed.2d 238 (1979)). Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Id.* (citing *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985)). The officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger. *Id.* (citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

Several essential facts are undisputed: Turner entered the residence with his gun drawn, found Cantwell and Langley in the bedroom, and placed Cantwell in a position where he could do no harm. Turner testified that he ascertained from Langley that she was not hurt and nothing was wrong at their residence. Only after holstering his gun did he search Cantwell. The court could have found Turner's pat-down search to be valid if the record were to contain "specific and articulable facts" that, when taken together with rational inferences from those facts, would warrant a self-protective search for weapons. *Id.* at 550–51; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex.Crim.App.1991); *see also Ramirez v. State*, 672 S.W.2d 480, 482 (Tex.Crim.App.1984). However, as in *Keah v. State*, Turner did not testify that he thought he saw a weapon or bulge, that he thought appellant was armed and dangerous, or that he believed his safety or that of others was in danger. *Keah v. State*, 508 S.W.2d 836, 839 (Tex.Crim.App. 1974). Thus, because Turner did not give "specific and articulable facts" to justify his search, we find support in the record for the court's implied finding that Turner's search was not reasonably warranted. *Johnson*, 68 S.W.3d at 652. Under-

standing that the court was engaged in "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," we do not find an abuse of discretion in granting the motion to suppress the evidence seized as a result Turner's pat-down search of Cantwell. *O'Hara*, 27 S.W.3d at 551.

## ALTERNATE THEORY OF ADMISSIBILITY

The State also argues that the evidence, if inadmissible to prove the elements of the offense, is admissible to corroborate Cantwell's admissions at the forfeiture hearing. The State says the admissions fall under Rule of Evidence 804(b)(1) and will be admissible at the trial on the marihuana charge. TEX.R. EVID. 804(b)(1). However, the State did not raise this argument in the trial court. When the State is the appellant, it must have preserved each theory on which suppression could have been denied by raising the theory in the trial court. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim. App.1998) ("[W]e hold that in cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."). Because the State did not present this theory, it has failed to preserve a complaint about it.

## Conclusion

The trial court did not abuse its discretion in suppressing evidence found as a result of a pat-down search conducted without a warrant. We affirm the suppression order and remand this cause for further proceedings.