# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00140-CR

**Humberto Aguirre Rodriguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. 632845, HONORABLE JAN BRELAND, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Humberto Aguirre Rodriguez appeals his conviction for unlawfully carrying a weapon, namely a handgun. *See* Tex. Pen. Code Ann. § 46.02 (West 2003).

Upon a plea bargain agreement being reached, appellant waived trial by jury and entered a plea of nolo contendere to the complaint and information in a bench trial. The trial court assessed punishment at seventy-five days' confinement in the county jail. The trial court had overruled appellant's motion to suppress evidence, and there being a plea bargain, appellant gave notice of appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.02 (West 1979); Tex. R. App. P. 25.2(a). The trial court certified appellant's right of appeal. Tex. R. App. P. 25.2.

**Points of Error**

Appellant advances four points of error. Appellant contends that the trial court erred by denying his motion to suppress evidence in that (1) Officer James Patterson did not have a reasonable suspicion, based on specific articulable facts, to believe that appellant was involved in criminal activity at the time appellant was detained; (2) Officer Patterson did not have a reasonable belief, based on specific articulable facts, that appellant was armed and dangerous at the time appellant was searched; (3) Officer Patterson did not have probable cause to believe that appellant had committed a criminal offense at the time appellant was searched; and (4) there was insufficient evidence that appellant committed an offense in the presence or view of Officer Patterson. We will affirm the judgment of conviction.

**Background**

On Saturday night, February 1, 2002, Austin Police Officer James Patterson was on duty with the Northeast Area Command Patrol. He had been on patrol in that area for nine months. On the night in question, Patterson received a call from the dispatcher that there were suspicious persons engaged in prostitution in the parking lot of a church on Capital Lane. Officer Patterson knew that the church was closed. The report did not mention a vehicle, or give the number, gender, or any physical description of the individuals. Being the officer nearest the church, Patterson proceeded in his patrol unit in the direction of the church. Two blocks short of his intended destination, Patterson came upon a pickup truck stopped at a stop sign on Middle Lane at the intersection with Capital Lane. He observed that the truck was stopped beyond the stop line, a traffic violation. The location was a high crime area for drug use, drug sales, and prostitution. The small

2

hotels or motels and a restaurant in the neighborhood were "hosts" to drug users and prostitutes. Officer Patterson had handled cases involving several prostitutes at the intersection in question.

As Patterson approached the truck, a woman exited on the passenger side and began walking in a ditch along a cinderblock fence at the rear of one of the motels. Patterson asked her to stop when she was about ten yards from the truck. She was described as a thin young woman in baggy clothing with blonde-brownish hair. Based on his experience and training, Patterson concluded that the woman had the appearance of a drug user. The woman told Patterson that she had been with friends who began to use drugs, that she got out of their car at a gas station, and that the truck's driver had picked her up on Lamar Boulevard.

The driver (identified as appellant) told Patterson that the young woman was his friend, although he could not recall her name. He said that he picked her up at Georgian and Powell streets. Patterson asked appellant to get out of the truck. Appellant did and immediately walked to the rear of the vehicle. Patterson thought this behavior was unusual. In response to inquiries, appellant denied that he had any drugs or a gun. Patterson requested appellant to go to the front of the truck so he could also keep his eye on the woman. At the front of the truck, appellant squatted down; he acted "fidgety." Appellant's demeanor concerned Patterson. It was nighttime, Patterson was the lone officer at the scene,[1] and it was a high crime area. Patterson was concerned about his safety. He asked appellant to stand and place his arms behind his back. As Patterson placed his left

---

[1] The evidence indicated there was a "rider" in the patrol car.

hand over appellant's hands, Patterson began to frisk appellant and immediately felt something in the waistband of appellant's pants. When asked what it was, appellant admitted that it was a gun. Patterson removed a handgun from appellant's possession.

With this factual background, we turn to the law applicable to motions to suppress evidence.

## Burden of Proof

A defendant who objects to evidence or seeks a pretrial suppression of evidence alleging an illegal search or seizure that violates the federal constitution bears the initial burden to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). This burden is met by proving that the police performed a search or seizure without a warrant. *Id*. Once the defendant establishes (1) that a search or seizure occurred and (2) that no warrant was obtained, the burden shifts to the State to produce either evidence of a warrant[2] or, if there is no warrant, to prove the reasonableness of the search or seizure pursuant to the recognized exceptions to the warrant requirement. *Id*.; *State v. Cantwell*, 85 S.W.2d 849, 852 (Tex. App.—Waco 2002, pet. ref'd). This proposition of law is frequently misapplied.[3]

---

[2] If the State produces evidence of a warrant and supporting affidavit valid on their face, the burden of proof shifts to the defendant to show the invalidity of the warrant. *Russell v. State*, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986).

[3] In the instant pretrial suppression hearing, apparently because it was understood there was no warrant, the trial court correctly indicated that the burden of proof was on the State. However, the trial court asked which party wanted to "go first." The prosecutor agreed to do so, but defense counsel stated, "We are prepared to call the officer." Appellant's trial counsel went forward with the evidence although the burden of proof was on the State. The arresting officer, the only witness, was called for "direct" examination. Appellant sought to establish the background for the stop involved while attempting to discredit any possible exception to the warrant requirement not yet

4

## Standard of Review

Generally, a trial court's ruling on a pretrial motion to suppress evidence is reviewed by an abuse of discretion analysis. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).[4] The appropriate standard of review has been characterized as a bifurcated review giving almost total deference to the trial court's findings of fact, expressed or implied, that are supported by the record, but conducting a *de novo* review of the trial court's application of the law to the facts.[5] *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (citing *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990)); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (using first and third categories of *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)); *Robuck v. State*, 40 S.W.3d 650,

---

established by the State. The prosecution took the witness on "cross-examination" according to the court reporter's record. The suppression hearing evidence is all the evidence presented to this Court to determine the constitutional issues raised.

[4] At a suppression hearing, the trial court is the sole finder of fact. *Arnold v. State*, 873 S.W.3d 27, 34 (Tex. Crim. App. 1993). The trial court is free to accept or reject any or all of the evidence presented. *State v. Cantwell*, 85 S.W.3d 849, 852 (Tex. App.—Waco 2002, pet. ref'd).

[5] Actually, the trial court's legal ruling will be upheld if it is correct on any theory of the law applicable to the case, even if the trial court gives the wrong reason therefor. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *see also Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Cantwell*, 85 S.W.3d at 852.

654 (Tex. App.—San Antonio 2001, pet. ref'd); *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd).

We turn now to the law applicable to the officer's actions as reflected by the hearing on the motion to suppress evidence.

## Police-Citizen Encounter

Not all encounters with law enforcement officers implicate the Fourth Amendment's protections against unreasonable seizures. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002). Police may approach and question an individual in a public place, without probable cause or reasonable suspicion to detain a person, and not violate the Fourth Amendment. *United States v. Drayton*, 536 U.S. 194, 200-01 (2002); *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). The questions may include inquiries as to the need for assistance, consent to search, and a variety of other matters. *See Corbin*, 85 S.W.3d at 276; *Hollingsworth v. State*, 15 S.W.3d 586, 591 (Tex. App.—Austin 2000, no pet.). This is permissible so long as the police do not "induce cooperation by coercive means." *Drayton*, 536 U.S. at 201. If a reasonable person would feel free to terminate the encounter then he has not been seized. *Id*.; *Corbin*, 85 S.W.3d at 276; *Hollingsworth*, 15 S.W.3d at 591. "Some encounters that start out constitutionally may, at some point, cross the line and become investigatory stops for which there must be reasonable suspicion or an arrest for which probable cause is required." *In re D.G.*, 96 S.W.3d 465, 468 (Tex. App.—Austin 2002, no pet.).

## Reasonable Suspicion

While a police officer must have probable cause for a full custodial arrest, a mere stop of an individual for the purpose of investigation does not require such substantial justification. *Terry v. Ohio*, 392 U.S. 1, 22-26 (1968); *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1987); *State v. Fudge*, 42 S.W.3d 226, 229 (Tex. App.—Austin 2001, no pet.). Law enforcement officers may stop and briefly detain persons suspected of criminal activity if reasonable suspicion exists. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997); *McQuarters v. State*, 50 S.W.3d 250, 258 (Tex. App.—Fort Worth 2001, pet. ref'd).

"Reasonable suspicion" exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant. The reasonable suspicion determination is made by considering the totality of the circumstances. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see also Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997).

The reasonableness of a temporary stop turns on the "totality of the circumstances" in each case. *Illinois v. Gates*, 662 U.S. 213, 230-31 (1983); *Fudge*, 42 S.W.3d at 229; *Davis v. State*, 794 S.W.2d 123, 125 (Tex. App.—Austin 1990, pet. ref'd). Reasonable suspicion, like the greater requirement of probable cause, is dependent upon both the content of the information possessed by the police and its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330 (1990). "Both factors—quantity and quality—are considered in the totality of the circumstances—the whole

picture . . . must be taken into account when evaluating whether there is reasonable suspicion." *Id.*; *see also Carmouche*, 10 S.W.3d at 323, 328-29 (Tex. Crim. App. 2000).

**Limited Search For Weapons**

Having lawfully detained a suspect for the purpose of an investigation, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987); 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 11.41 n.6 (2d ed. 2001). This is true even in the absence of probable cause where the officer reasonably believes the suspect is armed and dangerous. *Balentine*, 71 S.W.2d at 769; *Carmouche*, 10 S.W.3d at 329. *See also Terry*, 392 U.S. at 27, 29. The purpose of the limited search is not to discover evidence of a crime but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146 (1972); *Woods v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1976). Such a "weapons frisk" will be justified only where the officer can point to specific and articulable facts that reasonably led him to conclude that the suspect might possess a weapon. *Balentine*, 71 S.W.3d at 769 (citing *Carmouche*, 10 S.W.3d at 329). The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger. *O'Hara v. State*, 27 S.W.2d 548, 551 (Tex. Crim. App. 2000). It would be unreasonable to deny a police officer the right to neutralize the threat of physical harm. *Michigan v. Long*, 463 U.S. 1032, 1034 (1983). Roadside encounters, as in the present case, between the police and suspects are especially hazardous. *Id.* The limited "pat down" search is substantially less intrusive than a standard search requiring probable cause. *O'Hara*, 27 S.W.2d at 550. Under the

8

standards described, the right of an officer to conduct a frisk for weapons for his safety and that of others is an exception to the warrant requirement. *Id*.

**Discussion**

In the instant case, while enroute to a church parking lot where prostitution activity had been reported, Officer Patterson encountered a pickup truck on a public street. The truck was stopped at a traffic control device, a stop sign, but ahead of the stop line in violation of section 544.010 of the Texas Transportation Code. *See* Tex. Transp. Code Ann. § 544.010 (West 2002).**[6]** Patterson did not stop the truck. It was already stopped when Patterson arrived on the scene.

There is no requirement that a particular statute be violated in order to give rise to reasonable suspicion. *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.]

---

**[6]** The statute provides:

(a)     Unless directed to proceed by a police officer or traffic-control signal, the operator of a vehicle or streetcar approaching an intersection with a stop sign shall stop as provided by Subsection (c).

(b)     If safety requires, the operator of a vehicle approaching a yield sign shall stop as provided by Subsection (c).

(c)     An operator required to stop by this section shall stop before entering the crosswalk on the near side of the intersection. In the absence of a crosswalk, the operator shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop at the place nearest the intersecting roadway where the operator has a view of approaching traffic on the intersecting roadway.

Tex. Transp. Code § 544.010 (West 2002).

9

1997, no pet.). If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993); *Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 876, 877 (Tex. App.—Austin 1999, no pet.). Thus, the State is not required to show a traffic offense was actually committed but only that the officer reasonably believed a violation was in progress. *Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Here, the State only needed to elicit testimony that Officer Patterson knew sufficient facts to reasonably suspect that appellant had violated a traffic law. *McQuarters*, 58 S.W.3d at 255 (citing *Garcia*, 43 S.W.3d at 530). The State sustained this particular burden.

In addition, Patterson was in an area that he had been patrolling for nine months. The neighborhood and intersection where the truck was stopped was a high crime area for drugs and prostitution. The officer had handled several prostitution cases which occurred at the very intersection in question. A young woman got out of the truck and began walking in a ditch behind a motel used by prostitutes. To Patterson, the woman had the appearance of a drug user. Using his authority to approach citizens and ask questions without violating the Fourth Amendment, Patterson made inquiries of both the woman and the appellant in the truck. He received conflicting answers as to where appellant "picked up" the woman and learned that the woman had earlier left her friends because they were using drugs. Appellant claimed the woman was his friend but did not know her name. From the totality of the circumstances, Patterson reasonably suspected that criminal activity was afoot, possibly drugs or prostitution or both. Patterson had appellant get out of the truck. At

10

this point, appellant's conduct became unusual. He immediately walked to the rear of the truck without any instruction from the officer. This made it difficult for Patterson to converse with both appellant and the woman. He denied he had a gun or drugs. Patterson had appellant walk to the front of the truck but appellant squatted down. Appellant acted "fidgety." Patterson became concerned with appellant's actions. It was nighttime. Patterson was the only officer there. Patterson decided that for his safety and that of others a "pat down" search or frisk of appellant was necessary under the circumstances. Patterson had appellant stand. A slight frisk along the waistline of appellant's pants revealed an object. Appellant admitted it was a gun, and Patterson removed the gun from appellant's person. The limited search for safety reasons was properly conducted as a recognized exception to the Fourth Amendment. *O'Hara*, 27 S.W.2d at 550.

### Conclusions to Contentions

In his first point of error, appellant complains that the suppression ruling was erroneous because Patterson did not have reasonable suspicion that appellant was involved in criminal activity when appellant was detained. In our discussion we have, from the totality of the circumstances, rejected this contention in light of the possible traffic offense and the facts surrounding appellant's actions and involvement with a woman at night in a high crime area known for prostitution and drug use. Point of error one is overruled.

We also overrule point of error two in light of our earlier discussion of Patterson's right to search for weapons because of safety concerns. Appellant's own actions furnished the specific articulable facts underlying Patterson's reasonable belief that appellant was armed and dangerous.

11

In his third point of error, appellant urges that Patterson did not have probable cause to believe appellant had committed an offense at the time he was searched. The limited "pat down" search or "frisk" of appellant for weapons for the officer's safety was not a search incident to a warrantless arrest based on probable cause. Appellant had been lawfully detained on reasonable suspicion, a standard lower than probable cause. Officer Patterson was not required at the time of the "pat down" to have probable cause to believe appellant had committed an offense. The third point of error is overruled.

In the fourth point of error, appellant contends that the trial court erred in denying the pretrial suppression motion "because the evidence was insufficient to show that appellant had committed an offense in the view and presence of Officer Patterson." Reference is made to article 14.01(b) authorizing the warrantless arrest of an individual for an offense committed in the view and presence of an officer. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 1977). Appellant argues that at the time of the "frisk" Patterson placed his left hand on appellant's hands and had thus restrained and arrested him in light of article 15.22[7] *prior* to the discovery of the weapon on appellant's waistband. Appellant claims that "[u]nder Texas statutory law, the search of appellant's person cannot be justified as a search incident to arrest." Appellant's argument is difficult to follow because the State never claimed that the handgun was admissible in evidence as a result of a lawful search incident to arrest. The fourth point of error is overruled.[8]

_____

[7] Tex. Code Crim. Proc. Ann. art. 15.22 (West 1997).

[8] Appellant has not separately briefed his claim on the basis that the Texas Constitution provides greater rights than the Fourth Amendment to the United States Constitution. We will not address such contentions, if raised at all. *See* Tex. R. App. P. 38.1(h); *Etheridge v. State*, 903 S.W.2d 1, 21 n.1 (Tex. Crim. App. 1994); *Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim.

12

The trial court did not abuse its discretion in overruling the motion to suppress evidence. The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Kidd and Onion[*]

Affirmed

Filed:   October 2, 2003

Do Not Publish

---

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

---

App. 1991); *Hughes v. State*, 962 S.W.2d 689, 692-93 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).