IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00216-CR

 

The State of Texas,

                                                                                    Appellant

 v.

 

Earl Cody Rudd,

                                                                                    Appellee

 

 

 



From the County Court at Law

Ellis County, Texas

Trial Court No. 0710461CR

 



Opinion



 








            The State appeals an order granting
Earl Cody Rudd’s motion to suppress evidence related to his arrest for driving
while intoxicated and his motion to exclude the arresting officer’s testimony
regarding Rudd’s performance on the horizontal gaze nystagmus (HGN) test.  The
State contends in three issues that the court erred by ruling: (1) “that a
police officer may not lawfully question a witness to an accident unless the
officer has reasonable suspicion to believe that person has also committed an
offense”; (2) “that an officer has no probable cause to arrest a person the
officer believes to be intoxicated unless the officer personally witnessed that
person drinking and driving or operating a motor vehicle”; and (3) that the
results of an HGN test are inadmissible even if the court finds that the
officer was qualified and certified to perform that test.  We will affirm in
part and reverse and remand in part.

Background

            DPS Trooper Kenneth Nolley responded
to the scene of a single-vehicle accident at about 12:30 a.m.  There were three
people at the scene: the injured driver of a vehicle which had driven off the
road into the woods; Rudd; and Nicole Stroope, who was the first to discover
the accident.  There were also three vehicles: the wrecked vehicle, Stroope’s car;
and Rudd’s pickup.  An ambulance transported the injured driver to an open area
where he could be taken by helicopter to a hospital.  Rudd rode in the
ambulance to the helicopter landing site.[1] 
Stroope apparently followed the ambulance and then drove Rudd back to the
accident scene.

            Stroope told Nolley that she drove
upon the accident scene after leaving Rudd’s home.  When she arrived at the
scene, she called 9-1-1 and Rudd at the injured driver’s request.  At some
point, Nolley’s partner mentioned to Nolley that Rudd had an odor of an alchoholic
beverage about him.  When Nolley asked Rudd how he came to the accident scene,
Rudd said that “he responded” in his pickup after Stroope called him.

            Nolley then asked Rudd to perform
three field sobriety tests: the horizontal gaze nystagmus (HGN) test, the
walk-and-turn test, and the one-leg-stand test.  Nolley testified that he is trained
and certified to perform these standardized tests and that he conducted these
tests in accordance with his training.  He observed four of a possible six
clues of intoxication during the HGN test.[2]  He
testified that Rudd exhibited three of a possible eight clues of intoxication[3]
during the walk-and-turn test because he: stepped out of the instructional
position; used his arms for balance; and turned improperly.  Rudd’s performance
on the one-leg-stand test revealed no indicators of intoxication, although
Nolley observed that Rudd “did not count out loud as I had instructed to him
and demonstrated to him.”  At some point, Rudd told Nolley that he had consumed
about five or six alcoholic beverages during the course of the day.

            On cross-examination, Rudd’s counsel
highlighted the fact that Rudd apparently did not have slurred speech or red,
bloodshot eyes since Nolley did not mention these in his report and that Rudd
was apparently able to provide accurate information about the injured driver. 
Nolley was then asked about reasons why an officer may choose not to make a
video recording of the HGN test.

Q:    Now, then, let’s talk about the fact that
you did three tests.  How many of them were videotaped?

 

A:     Standardized field sobriety test, there
were two that were videotaped.

 

Q:    Is it possible—or could you have videotaped
all three tests?

 

A:     Yes, sir.

 

Q:    Is it not true that the reason that you
didn’t videotape the HGN is because you’ve been informed by prosecutors and
other law enforcement officers to do it off camera, that way a defense attorney
can’t attack the way you administered it?

 

A:     I have been advised, sir.

 

Q:    Is that why you did it?

 

A:     No, sir.

 

Q:    Why didn’t you videotape it if you could
have?

 

A:     Sir, I moved him to a position that was
away from flashing lights that could interfere with one of the tests, sir.

 

            Nolley was also cross-examined about
his compliance with DPS videotaping policy,[4]
about another trooper at the scene adjusting the camera during the field
sobriety tests, and further about the decision to not videotape the HGN test.

Q:    And you would agree that in this case you
did not follow the DPS policy?

 

A:     That’s incorrect, sir.

 

Q:    Well, the videotape wasn’t on him when you
were doing the HGN, was it?

 

A:     It never states that it has to be on the
suspect, sir.  It has to be on, and it was.

 

Q:    All right.

 

A:     In accordance with the policy.

 

Q:    Well, you—you would agree that when it came
time for the one-leg-stand and the heel-to-toe, that not only did you move your
car, but there were several times that you ran back to the car and adjusted the
camera?

 

A:     I don’t believe I adjusted the camera,
sir.  I believe the trooper who was in the car adjusted the camera.

 

Q:    And you all had a conversation about is that
a good picture, does that show up?

 

A:     Probably did, sir.

 

Q:    Why didn’t you do it with the HGN?

 

A:     Not required to, sir.

 

Q:    Not required to.  I thought earlier the
reason you said you didn’t do it is because you were told by prosecutors and
other troopers that that prevents a defense attorney to figure out whether or
not you did it right?

 

A:     I was told that, sir.  But once again, I’m
still not required to.  And, still again, flashing lights could hinder the HGN
test.

 

Q:    Well, you can turn your flashing lights off,
can’t you?

 

A:     Some of them, sir.  But I can’t control
other people’s who—the ambulances on scene, fire trucks.

 

Q:    You could have turned your car away around
from them?

 

A:     Could have done it off camera, and I did,
sir.

 

            Nolley further agreed that one of the
purposes for the DPS videotaping policy is to allow supervisors to evaluate an officer’s
performance and that, because he had not recorded Rudd’s HGN test, his
supervisors could not evaluate whether he had properly conducted the test.  He
likewise conceded that neither defense counsel nor an expert could evaluate his
conduct of the test.

            Regarding the one-leg-stand test,
Nolley conceded that he did not specifically instruct Rudd to count out loud
even though the DPS manual provides that the test subject should be so
instructed.[5]

            Regarding the walk-and-turn test,
Nolley conceded that he left Rudd standing in the “instructional position”
(heel touching toe) on three different occasions while Nolley adjusted the
camera, turned off the flashers, and talked to the other trooper.

Q:    Now, is that protocol under your—under your
manual?

 

A:     It doesn’t say that you can’t; it doesn’t
say that you can.

 

            Nolley was the only witness at the
suppression hearing.  At the conclusion of the hearing, the court ruled, “I’m
going to grant the Motion to Suppress based on failure to have sufficient
reasonable suspicion to conduct the standardized field sobriety test.”  The
court later signed an order containing detailed findings of fact and
conclusions of law which are not separately numbered.  The concluding paragraph
of this order summarizes the court’s ruling as follows:

            There was no reasonable suspicion to
detain the Defendant at the time of his detention.  The detention of the
Defendant was unlawful under the circumstances presented by this case.  The
development of evidence subsequent to the unlawful detention of the Defendant
was improper.  Evidence obtained as a result of the unlawful detention of the Defendant
is suppressed.  The State failed to establish the admissibility of the HGN test
and the observations or opinions related to the HGN test.  The administration
of the HGN test and the results therefrom are suppressed.  The arrest without
warrant of the Defendant was improper.  The criteria for an arrest without a warrant
is lacking in this case.  Evidence obtained as a result of the arrest is
suppressed.

 

Reasonable Suspicion

            The State contends in its first issue that
the court erred by “ruling that a police officer may not lawfully question a
witness to an accident unless the officer has reasonable suspicion to believe
that person has also committed an offense.”  We construe this as a challenge to
the court’s implicit conclusion that an officer must have reasonable suspicion
to require a person to undergo field sobriety testing and the court’s express
conclusion that Nolley did not have reasonable suspicion when he had Rudd
perform field sobriety tests.

            At a suppression hearing, the trial
court is the sole judge of the credibility of witnesses and the weight to be
given their testimony.  Wiede v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007).  Thus, the court may choose to believe or disbelieve any or all of a
witness’s testimony.  Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007).  “This Court is not at liberty to disturb any fact finding that is
supported by the record.”  Id.  We view the evidence in the light most
favorable to the court’s ruling.  State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When as here the court makes explicit findings of fact, we must determine
whether the evidence supports those findings.[6]  Id.  We then review the court’s legal ruling de novo unless the court’s findings
(which are supported by the evidence) are also dispositive of the legal ruling.
 Id.

            “There are three recognized categories
of interaction between the police and citizens:  encounters, investigative
detentions and arrests.”  State v. Larue, 28 S.W.3d 549, 553 n.8 (Tex.
Crim. App. 2000) (quoting Francis v. State, 922 S.W.2d 176, 178 (Tex. Crim.
App. 1996) (Baird, J., concurring and dissenting)).  An encounter occurs when
an officer approaches a person in public to ask questions.  See Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991);
Harper v. State, 217 S.W.3d 672, 674 (Tex. App.—Amarillo 2007, no pet.).
 An officer need not show any particular level of suspicion for such an
encounter because the citizen is under no obligation to continue speaking with
the officer.  Bostick, 501 U.S. at 434, 111 S. Ct. at 2386; Larue,
28 S.W.3d at 553 n.8; Harper, 217 S.W.3d at 674.  However, because an
investigative detention and an arrest involve a seizure, an objective level of
suspicion must be shown to justify the seizure.  Larue, 28 S.W.3d at 553
n.8.  For an investigative detention, the officer must show reasonable
suspicion.  Id.; Harper, 217 S.W.3d at 675.  For an arrest,
probable cause is required.  Larue, 28 S.W.3d at 553 n.8.

            Generally, an officer’s questioning of
a witness during an accident investigation is a consensual encounter.  See State v. Stevenson, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997); Stoutner
v. State, 36 S.W.3d 716, 719-20 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d); see also Harper, 217 S.W.3d at 675 (officer’s questioning of person
found passed out in vehicle in parking lot was an encounter).  The answers to
the officer’s questions and other observations by the officer may then provide
reasonable suspicion to believe that the offense of DWI has occurred.  Stevenson,
958 S.W.2d at 829; Stoutner, 36 S.W.3d at 719-20.  If so, the encounter escalates
to an investigatory detention during which the officer conducts field sobriety
tests.  See Arthur v. State, 216 S.W.3d 50, 55 (Tex. App.—Fort Worth 2007,
no pet.); Reynolds v. State, 163 S.W.3d 808, 810-11 (Tex. App.—Amarillo
2005), aff’d, 204 S.W.3d 386 (Tex. Crim. App. 2006); Stoutner, 36
S.W.3d at 719-20.  The results of the sobriety testing may then lead to
probable cause for an arrest.  See Rodriguez v. State, 191 S.W.3d 428,
444-45 (Tex. App.—Corpus Christi 2006, pet. ref’d); see also State v. Kurtz,
152 S.W.3d 72, 85 (Tex. Crim. App. 2004) (Holcomb, J., dissenting) (citing Stone
v. State, 703 S.W.2d 652, 654-55 (Tex. Crim. App. 1986)).

            Here, the State is correct to say that
Trooper Nolley did not need to have even reasonable suspicion to talk with Rudd
at the accident scene and ask questions about the accident.  See Stevenson,
958 S.W.2d at 829; Harper, 217 S.W.3d at 675; Stoutner, 36 S.W.3d
at 719-20.  However, the State’s contentions are incorrect insofar as the State
is asserting that an officer may require a person to undergo field sobriety
tests without reasonable suspicion that the person has committed an
intoxication offense.  See Arthur, 216 S.W.3d at 55; Reynolds,
163 S.W.3d at 810-11; Stoutner, 36 S.W.3d at 719-20.  Thus, the trial
court correctly required a showing of reasonable suspicion to justify Rudd’s
detention for field sobriety tests.  We now examine the court’s conclusion that
the State failed to establish the requisite reasonable suspicion.

            “’Reasonable suspicion’ exists if the
officer has specific articulable facts that, when combined with rational
inferences from those facts, would lead him to reasonably suspect that a
particular person has engaged or is (or soon will be) engaging in criminal
activity.”  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). 
Reasonable suspicion is determined from the totality of the circumstances.  Id.

            Although the court was free to
disbelieve Trooper Nolley’s testimony, the State suggests that the court’s
findings do not indicate that it disbelieved his testimony but rather that the
court believed he did not identify sufficient articulable facts to justify the
detention.  Rudd does not agree with the State’s view and contends that court’s
findings indicate that the court “did not believe much, if any, of the testimony
provided by Nolley.”

            The court’s findings do not provide
much clarity in this regard.  For example, the court found that Nolley
“estimated” his time of arrival to be about fifteen minutes after Stroope
called 9-1-1 and that Rudd returned from the helicopter landing area about one
hour later.  But there is nothing in the court’s findings to indicate that the court
rejected these “estimates.”  Cf. State v. Cullen, 227 S.W.3d 278,
281 (Tex. App.—San Antonio 2007, pet. ref’d) (express finding that officer’s
testimony “is not credible”); Duhig v. State, 171 S.W.3d 631, 638 (Tex.
App.—Houston [14th Dist.] 2005, pet. ref’d) (express findings that officer was
credible but defense witnesses were not).  Our review of the court’s findings
of fact and conclusions of law leads us to conclude that the court accepted
Nolley’s testimony as credible (with the possible exception of his testimony
regarding the field sobriety tests) but determined that the facts testified to
by Nolley did not establish reasonable suspicion to detain Rudd for further
investigation.

            The court found there was no
reasonable suspicion because: Nolley did not see Rudd driving his pickup; there
was “no clear evidence” regarding if or when Rudd drove the pickup; Nolley did
not observe any indications of intoxication before the other officer mentioned
that Rudd smelled of alcohol; there was no evidence of Rudd’s conduct when he
accompanied the victim to the helicopter landing site; and there was no
evidence that Rudd intended or attempted to drive his pickup at any time after
Nolley arrived at the scene.

            We begin with the court’s finding that
there was “no clear evidence” regarding if or when Rudd drove the pickup. 
Viewing the evidence in the light most favorable to this finding, the finding
is simply not supported by the record.  See Kelly, 204 S.W.3d at 818. 
The court found that Stroope called 9-1-1 at about 12:15 a.m.[7]
and that Nolley arrived at the scene about fifteen minutes later.  From the
testimony, Stroope called 9-1-1 and Rudd promptly after her arrival on the
scene, and Rudd arrived at the scene before Nolley.  

            Regarding the question of “if” Rudd
drove the pickup, Nolley testified that there were three vehicles and three
people at the scene when he arrived.  Stroope told Nolley that she called Rudd
at the victim’s request.  Rudd told Nolley that he “responded” to the scene
when he received the call.  Nolley “believed” that Rudd said that he had
“responded” in the pickup.

            It would not be reasonable to infer
that Rudd was already present when Stroope came upon the accident scene in
light of the victim’s request that Stroope call Rudd.  Nor would it be
reasonable to infer that Rudd’s pickup had been fortuitously parked at the
accident scene earlier in the night.  Therefore, the only reasonable inference
to be drawn from the testimony is that Rudd drove to the accident scene in his
pickup sometime between approximately 12:15 and 12:30 that morning.

            The fact that Nolley did not
personally observe Rudd driving the pickup is irrelevant.  Article 14.03(a)(1)
of the Code of Criminal Procedure provides in pertinent part that an officer
may arrest a person found in a suspicious place under circumstances reasonably
showing that he committed a violation of any of the intoxication offenses in
Chapter 42 of the Penal Code.  See Tex.
Code Crim. Proc. Ann. art. 14.03(a)(1) (Vernon Supp. 2007).  Thus, an
officer may have probable cause to arrest a person for DWI if the officer finds
the arrestee in circumstances indicating that the arrestee committed this
offense, even though the officer did not see the arrestee driving a vehicle.  See,
e.g., Dyar v. State, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003); Layland
v. State, 144 S.W.3d 647, 650 (Tex. App.—Beaumont 2004, no pet.).

            Reasonable suspicion is determined from
the totality of the circumstances.  Garcia, 43 S.W.3d at 530.  Here, the
totality of relevant circumstances known to Trooper Nolley at the time he
detained Rudd for field sobriety testing were: (1) Rudd had recently been
driving his pickup; (2) Rudd had the odor of an alcoholic beverage about his
person; and (3) Rudd told Nolley that he had consumed several alcoholic
beverages earlier in the day.  Thus, Nolley identified specific, articulable
facts which provided reasonable suspicion to believe Rudd may have been driving
his pickup while intoxicated.  See Stoutner, 36 S.W.3d at 720.

            Accordingly,
we sustain the State’s first issue.

 

 

 

Admissibility of HGN

            The State contends in its third issue
that the court erred by sustaining Rudd’s motion to exclude the HGN test
results in view of the court’s finding that Trooper Nolley was qualified and
certified to perform that test.

            Testimony regarding HGN is scientific
evidence, and its admissibility is governed by Rule of Evidence 702.  See Emerson
v. State, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994); Plouff v. State,
192 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2006, no pet.); Ellis v.
State, 86 S.W.3d 759, 760 (Tex. App.—Waco 2002, pet. ref’d).  Challenges to
the admissibility of evidence under Rule 702 may be raised at a pretrial
hearing, and the State may appeal an adverse ruling from such a hearing if the
effect of that ruling is to “eviscerate the State’s ability to prove its
case.”  State v. Medrano, 67 S.W.3d 892, 896 (Tex. Crim. App. 2002). 
Thus, in a later proceeding the Court in Medrano addressed the State’s
appeal of an adverse pretrial ruling on the admissibility of hypnotically
enhanced testimony.  See State v. Medrano, 127 S.W.3d 781, 782 (Tex. Crim. App. 2004).

            Relying on an earlier version of Rule
702,[8]
the Court of Criminal Appeals explained in Emerson that scientific
evidence must be helpful to the trier of fact to be admissible under Rule 702,
which among other things requires that the evidence be reliable.  Emerson,
880 S.W.2d at 763; accord Plouff, 192 S.W.3d at 218; Ellis, 86
S.W.3d at 760.  To be reliable, evidence regarding HGN (and scientific evidence
in general) must satisfy three criteria: “1) the underlying scientific theory
must be valid; 2) the technique applying the theory must be valid; and 3) the
technique must have been applied properly on the occasion in question.”  Emerson,
880 S.W.2d at 763 (citing Kelly v. State, 824 S.W.2d 568, 573 (Tex.
Crim. App. 1992)); accord Plouff, 192 S.W.3d at 218; Ellis, 86
S.W.3d at 760.  “The HGN test therefore must satisfy the three requirements set
forth in Kelly in order to be admissible under Rule 702.”  Emerson,
880 S.W.2d at 764.

            True, most of the focus in Emerson
was on the first two criteria, namely, whether “the theory underlying the HGN
test and the technique employed in its administration are both reliable.”  Emerson,
880 S.W.2d at 764.  Accordingly, the Court devoted four pages of its opinion to
a general examination of these two criteria, including a review of relevant
literature and a survey of how other states address the admissibility of HGN.  Id. at 764-68.  The Court then applied the three criteria of Kelly to
the facts of the case.  Id. at 768-69.  With regard to the third
criteria, the Court concluded that the officer had followed the proper
technique.  Id. at 769.

            Here, Rudd did not challenge and the
trial court did not reject the reliability of HGN theory or of the recommended
technique.  Rather, the court concluded, “The testimony and record does [sic] not
establish that the tests were administered properly and/or that the results
from the tests are reliable.”  See Compton v. State, 120 S.W.3d 375, 377
(Tex. App.—Texarkana 2003, pet. ref’d) (“Under the Emerson three-part
reliability test, even if a test’s underlying scientific theory and technique
applying the theory are valid, improper application of the technique would
render the test unreliable.”).  Thus, the court focused on the third of the Kelly
criteria.  Although Trooper Nolley testified that he administered the HGN
test in accordance with the recommended procedures, the court found his
credibility to be lacking on this issue because of his failure to have Rudd
perform the HGN test on video.  See Garza, 213 S.W.3d at 346 (court may
choose to believe or disbelieve any or all of a witness’s testimony).

            The State cites Compton for the
proposition that any complaint regarding Nolley’s failure to videotape the HGN
test and any “possible variation” on his part from the recommended procedure
would affect only the weight to be given the HGN evidence and not its
admissibility.  See Compton, 120 S.W.3d at 378-79.  We disagree.  In Compton, the court addressed what it described as “negligible” variances between
the procedures employed by the arresting officer and the recommended
procedures.  Id.  Thus, as the Fourteenth Court of Appeals has observed,
 Compton stands only for the proposition that “[s]light variations in
the administration of the HGN test do not render the evidence inadmissible or
unreliable, but may affect the weight to be given the testimony.”  Plouff,
192 S.W.3d at 219.

            The court found that the State failed
to prove that Trooper Nolley properly administered the HGN test to Rudd.  The
court was within its discretion to do so.  See Garza, 213 S.W.3d at
346.  Based on the State’s failure to prove the third requirement of Kelly
for the admissibility of scientific evidence, the court did not abuse its
discretion by excluding this evidence.  See Emerson, 880 S.W.2d at 764; Compton,
120 S.W.3d at 377.  Therefore, we overrule the State’s third issue.

Conclusion

            The trial court erred in its
conclusion that Trooper Nolley did not have reasonable suspicion to detain Rudd
for field sobriety testing.  Thus, the court erred by excluding evidence of
field sobriety testing on the basis that it was obtained because of an invalid
detention.  However, the court did not abuse its discretion by excluding
evidence of the HGN test because of the State’s failure to prove that Trooper
Nolley had properly administered the test.  Because the court did not address
the issue of probable cause, we do not reach the State’s second issue.  See
Tex. R. App. P. 47.1.

We affirm that part of the trial court’s order
excluding Trooper Nolley’s testimony regarding the HGN test.  We reverse the
remainder of the court’s order and remand this cause to the trial court for
further proceedings consistent with this opinion.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Justice
Vance dissents from the judgment with a note)*

Affirmed in part,

Reversed and remanded in
part

Opinion delivered and
filed April 2, 2008

Publish

[CR25]

 

*(I would defer to the trial court’s resolution of
the factual matters presented to him and affirm the suppression order in all
respects.  Abuse of discretion is the standard, and we should reverse only if
the trial court’s resolution is outside the bounds of reasonable disagreement. 
 See State v. Cantwell, 85 S.W.3d 849, 852 (Tex.
App.—Waco 2002, pet. ref’d)).









[1]
              Trooper Nolley identified the
injured driver as Rodney Rudd.  According to Nolley’s cross-examination, Rodney
and Earl are cousins.





[2]
              Nolley testified that four
clues on the HGN test constitute the “decision point” at which an officer will
generally arrest a suspect for DWI.

 





[3]
              Nolley testified that two
clues of intoxication constitute the “decision point” for the walk-and-turn
test.





[4]
              According to Nolley, DPS
policy requires that the in-car videocamera remain in operation from the time
contact is initiated until the interaction has ceased.





[5]
              Nolley testified, “I told him
[to count] like this.”  “And I counted out loud.”





[6]
              By contrast, when a trial court
does not make explicit findings, we “must defer not only to all implicit
factual findings that the record will support in favor of [the] trial court’s
ruling, ‘but also to the drawing of reasonable inferences from the facts.’”  Amador
v. State, 221 S.W.3d 666, 674-75 (Tex. Crim. App. 2007) (quoting Kelly
v. State, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005)).





[7]
              The actual finding is that
“[t]he call was received at approximately 12:15 a.m.”





[8]
              Although the Court was relying
on Rule of Criminal Evidence 702, there is no substantive difference between
that rule and current Rule of Evidence 702.  Compare Tex. R. Crim. Evid. 702, 701-702 S.W.2d
(Tex. Cases) li (1985, repealed 1998), with Tex. R. Evid. 702.