# NO. 12-10-00353-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RICHARD CALVIN GEORGE,* *APPELLANT* | § | *APPEAL FROM THE 124TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

After the trial court denied his motion to suppress, Appellant, Richard Calvin George, pleaded guilty to the offense of possession of a controlled substance, cocaine, in an amount of four grams but less than two hundred grams. He also pleaded true to the allegations in the indictment that he had two prior felony convictions. The trial court found Appellant guilty, found the enhancement allegations to be true, and assessed Appellant's punishment at imprisonment for forty-five years.

In his first issue on appeal, Appellant contends the trial court erred in overruling his motion to suppress. In his second issue, Appellant maintains the trial court erred in entering judgment for a higher grade felony than that to which he entered his plea. We modify and affirm as modified.

### BACKGROUND

Gregg County Deputy Sheriff Douglas Morgan saw Appellant turn onto State Highway 300 from George Richey Road. Some two months before, the Gregg County CODE Unit had

informed Deputy Morgan that Appellant was possibly selling illegal narcotics. Based upon that information, Deputy Morgan began following Appellant's 2000 Chevrolet Impala looking for a reason to stop him. A small SUV, a 2002 Ford Escape, driven by Emily Raborn was between Appellant's Impala and Deputy Morgan's Chevrolet Tahoe patrol car. Appellant slowed his vehicle and turned into the AutoZone parking lot. Deputy Morgan made a traffic stop, because Appellant failed to signal his turn continuously for not less than the last 100 feet of movement before the turn as required by Texas Transportation Code, Section 545.104(b). Deputy Morgan, in his testimony at the suppression hearing, repeatedly maintained that by leaning to the right in the cab of his vehicle, he could see the right turn light of Appellant's vehicle and it was not flashing until Appellant actually began his turn.

The view of Appellant's turn indicator by the video camera in the deputy's patrol car was blocked by Raborn's Ford Escape. Ms. Raborn testified that she remembered the driver in front of her (Appellant) "hit his brakes a few times, and then there was a really sudden turn. And then I remember the police behind me jerking in the parking lot." When she was asked when Appellant turned on his turn indicator, she responded, "To the best of my memory, it seemed as if he did it at the last – during the turning."

When Deputy Morgan made contact with Appellant after the stop in the parking lot, he noticed that Appellant's hands were shaking as if he was very nervous. Deputy Morgan asked and received Appellant's permission to search his car. Deputy Morgan found 13.6 grams of suspected crack cocaine in a plastic baggy and $7,000 in U.S. currency. A search of Appellant's wallet revealed another $3,190 in U.S. currency.

At the close of the hearing on Appellant's motion to suppress, the trial court made the following findings of fact and conclusions of law:

*Findings of Fact*

1. There was no warrant for the arrest of Appellant and no search warrant.

2. Officer Morgan was traveling in an SUV-type police vehicle equipped with video.

3. The video itself does not show Appellant's "right or left signal until actually

the turn is made, but that you can't see the signal beforehand on video."

4. The officer testified that several times he moved to his right in the vehicle to try and observe Appellant's vehicle and signals, and on three occasions on the video the officer's vehicle clearly moves to the right, most notably at the end when Appellant is making his turn.

5. Ms. Raborn's testimony was considered only as to the issue of the officer's credibility and not on the issue of whether or not Appellant used his signal.

6. The officer testified that Appellant moved to his right slightly before making the turn, and that he (the officer) moved to his right at that time.

7. The officer testified that Appellant's blinker was clearly in sight at that point, and that Appellant did not turn on his signal within the required distance and did not do so until he was making the turn.

*Conclusions of Law*

1. The failure to comply with turning on the signal under Section 545.104, Texas Transportation Code, within 100 feet of an intersection is a traffic violation.

2. The officer had probable cause to stop Appellant under Section 545.104, Texas Transportation Code, because Appellant violated that statute.

### MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred in denying his motion to suppress because the visual evidence establishes that the arresting officer could not have seen the turn signal of Appellant's vehicle.

### Standard of Review

In reviewing a trial court's ruling on a motion to suppress,

the appellate courts . . . should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. The appellate courts . . . should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category.

3

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (internal citations omitted).

In this case, the trial court made findings of fact. We therefore give almost total deference to those findings that are supported by the record, especially when they involve determinations of credibility and demeanor. *See id.*; *see also Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). We review de novo the court's application of the law to those facts. *See Carmouche*, 10 S.W.3d at 328.

However, the discretion of the trial court is not absolute, particularly when there is "indisputable visual evidence contradicting essential portions of [the witness's] testimony." *Montanez v. State*, 195 S.W.3d 101, 110 (Tex. Crim. App. 2006). A reviewing court cannot blind itself to videotape evidence simply because a witness's testimony may, by itself, be read to uphold the trial court's ruling. *Id*. In reviewing a trial court's ruling on a motion to suppress, the appellate court must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

## Applicable Law

If the state makes an arrest without a warrant, the burden is on the state to show that there was probable cause for the stop, arrest, and subsequent search. *State v. Cantwell*, 85 S.W.3d 849, 852 (Tex. App.–Waco 2002, pet. ref'd). "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. ANN. § 14.01(b) (Vernon 2005); *see also Carmouche*, 10 S.W.3d at 328 n.6. "An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." TEX. TRANSP. CODE ANN. § 545.104(b) (Vernon 1999). "[A]n objectively valid traffic stop is not unlawful under Article 1, § 9 [Constitution of Texas], just because the detaining officer had some ulterior motive for making it." *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995).

## Discussion

Raborn's small SUV was between Appellant's vehicle and Deputy Morgan's large SUV patrol vehicle. Therefore, the view of the patrol car's video camera was blocked by Raborn's vehicle. Nevertheless, Deputy Morgan maintained that by leaning to the right in the front seat of his patrol vehicle, he could view the right blinker of Appellant's vehicle. Deputy Morgan was candid enough to admit that he was searching for a reason to stop Appellant. As a result, his

claim that he could lean far enough to the right to see Appellant's turn indicator must provoke skepticism. Consequently, the issue presented turns entirely on the credibility of Deputy Morgan.

*Guzman* mandates that the reviewing court afford almost total deference to the trial court's determination of historical facts–especially when the trial court's findings are based on an evaluation of credibility and demeanor. We have viewed the videotape of the stop. It does not prove or disprove the violation. Nor does it provide "indisputable visual evidence contradicting" the deputy's claim that he could see Appellant's turn indicator by leaning to the right in the front seat of his patrol vehicle. The trial judge was best positioned to observe Deputy Morgan's demeanor and assess his credibility. The trial judge found his claim credible. Ms. Raborn's testimony supported Deputy Morgan's version of events. The trial court's findings of historical fact are supported by the evidence. Appellant's first issue is overruled.

## ERROR IN THE JUDGMENT

In his second issue, Appellant contends the trial court erred in entering judgment for a higher grade felony than that to which Appellant entered his plea.

Appellant correctly contends that the judgment states the wrong offense, the wrong grade of felony, and the wrong statute. The judgment recites that Appellant pleaded guilty to the offense of "MAN DEL CS PG1>=4G<200G, which apparently means he pleaded guilty to delivery of a controlled substance in Penalty Group 1 in an amount of four grams but less than two hundred grams. Both the reporter's record of the plea hearing and the judge's criminal docket entry show that Appellant did not plead guilty to intent to deliver the controlled substance but only to the possession of the controlled substance. The offense to which Appellant pleaded guilty is found in Texas Health and Safety Code, Section 481.115, not Section 481.112(d) of the Texas Penal Code. The offense is a second degree felony, not a first degree felony as recited in the judgment. The final four errors in the judgment concern the enhancement paragraphs. The clerk preparing the judgment wrote "N/A" in each of the four blanks pertaining to the plea and findings on each of the two enhancement paragraphs. "True" should have been entered in each blank in order to show what happened at the hearing on punishment.

In accepting Appellant's plea of guilty, the trial court questioned Appellant, as follows:

THE COURT: Mr. George, the State is willing to proceed on Paragraph B of the Indictment, which just alleges straight possession, not intent. Now, what I have before me is that, understanding that, if I find the two enhancement allegations true, it doesn't change the range of punishment. If I find those enhancement allegations true, the range of punishment is still 25 years to 99 years or life. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Understanding that, are you telling me you are guilty, under Paragraph B, of possession of a controlled substance, namely cocaine, 4 grams or more, but less than 200 grams?

THE DEFENDANT: Yes, sir.

Then the trial court examined Appellant regarding the enhancement allegations contained in the indictment.

THE COURT: Let me go over those real quickly.

Mr. George, the State has also filed a Notice of Enhancement to raise the range of punishment. And that alleges that you have at least twice before been convicted of felonies in this state. One, that on July 17th, 1998, in Cause No. 25,364, in the 188th District Court of Gregg County, you were convicted of the offense of delivery of a controlled substance. Is that allegation true?

THE DEFENDANT: Yes, sir.

THE COURT: And after that conviction became final on the 28th day of August 2003, in Cause No. 30,493-B, in the 124th District Court of Gregg County, you were convicted of the offense of possession of a controlled substance, a third degree felony. Is that allegation true?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading "true" to these two enhancement allegations because they are in fact true and for no other reason?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that if I find those allegations true, that means the range of punishment is 25 to 99 years or life. You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you're asking me to find those true also; is that correct?

THE DEFENDANT: They're true, sir.

At the sentencing hearing, the trial judge pronounced sentence, as follows:

> Based on your plea of "guilty" to the offense of possession of a controlled substance, and under Paragraph B, I'm going to find you guilty of that offense. Based upon your pleas of "true" to the two enhancement allegations, I find those to be true. I'm not going to sentence you to life in prison. But, Mr. George, an 8-year sentence did nothing, two 10-year sentences have not done it.
>
> You are a habitual offender. You're a habitual drug dealer. If you want the help that you say you want, you're going to have an opportunity to use the in-house SAFPF program. But I also have to make sure that the citizens of Gregg County are protected.
>
> I'm going to sentence you to 45 years confinement in the Institutional Division of the Texas Department of Criminal Justice.

## Applicable Law

A reviewing court has the power to modify incorrect judgments when the record contains sufficient information to do so. *Jackson v. State*, 288 S.W.3d 60, 64 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd); *State v. Shepherd*, 920 S.W.2d 420, 422 (Tex. App.–Houston [1st Dist.] 1996, pet. ref'd); *see also* TEX. R. APP. P. 43.2(b). A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement. *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002). If the oral pronouncement of sentence and the written judgment are different, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). Punishment that falls within the limits prescribed by statute is not excessive, cruel, or unusual. *Jacobs v. State*, 80 S.W.3d 631, 633 (Tex. App.–Tyler 2002, no pet.).

## Discussion

Appellant claims that the error is judicial, not clerical, and cannot be reformed. "It seems apparent," Appellant argues, "that the trial court persisted in its erroneous perception of Appellant's offense as being possession with intent to deliver." Appellant maintains the judgment is void. He argues that since it "refers to the higher grade felony of possession with intent to deliver," it exposes him to twice being placed in jeopardy for the same offense. Finally, he argues that the punishment assessed was cruel and unusual.

The record simply does not support Appellant's argument. It is crystal clear that both the trial court and Appellant understood that Appellant was pleading guilty to possession, not delivery, of a controlled substance. Appellant pleaded true to the two enhancement allegations

7

after being informed that the range of punishment was twenty-five years to life in prison. At sentencing, the trial judge reiterated that he was sentencing Appellant to forty-five years of confinement based on his plea of guilty to possession of a controlled substance. Therefore, the errors in the judgment are clerical, and the judgment is not void. The sentence is within the limits prescribed by statute, and therefore, neither cruel nor excessive. Appellant's second issue is overruled.

## CONCLUSION

We have overruled Appellant's two issues. However, the trial court's judgment contains clerical errors. Accordingly, we modify the judgment to show that Appellant was convicted of possession of a controlled substance in the amount of four grams or more but less than two hundred grams, a second degree felony. The judgment is further modified to show that Appellant pleaded true to both enhancement paragraphs and the trial court so found. The statute for the offense is modified to show Section 481.115 of the Texas Health and Safety Code. The judgment is *affirmed as modified*.

## BILL BASS
Justice

Opinion delivered June 8, 2011.
*Panel consisted of Worthen, C. J., Griffith, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)