STATE of Texas,

v.

**Keithad Lamon LARUE and Sammey Ray Lusk, Appellees.**

Nos. 37–00, 38–00.

Court of Criminal Appeals of Texas.

Oct. 4, 2000.

Lane Vaughn, Houston, for appellant.

Matthew Paul, State's Atty., Austin, for the State.

## *O P I N I O N*

MEYERS, J., delivered the unanimous opinion of the Court.

Appellees were each charged with the offense of possession with intent to deliver. Appellees' pretrial motion to suppress was granted by the trial court and the State appealed. The Thirteenth Court of Appeals affirmed. *State v. Larue*, 6 S.W.3d 671 (Tex.App.—Corpus Christi 1999). We granted the State's petition for discretion-ary review to determine whether the appellate court erred in affirming the trial court's suppression of evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution.

### I.

On November 5, 1997, Officer Louis Boldt was patrolling the Anna Blackley government housing development in Victoria County. Boldt had been assigned to patrol government housing for four years. Boldt encountered appellee Larue and, because he was not familiar with Larue, asked for identification and ran a warrant check on him.[1] When the check came back showing there were no warrants out on Larue, Boldt thanked him and began walking back to his personal truck to continue patrolling the area.

While returning to his truck, Boldt briefly encountered a second individual, later identified as appellee Lusk, near a new white Chevrolet Cavalier convertible parked on the street. Not recognizing the car, Boldt decided to run a license plate check. Boldt drove his truck down the block and waited for the check to be completed. While waiting, Boldt observed Lusk and Larue get into the car along with two women and an infant.

The license check reflected that the car, which had Texas license plates, was registered to a Florida rental car company. Boldt decided to speak with appellees about the status of the car. Boldt drove his truck back down the street and parked behind the car, which had the ignition on but had not yet been moved. Boldt got out of his truck and began walking toward the car, at which time Lusk got out of his car and approached Boldt.

Lusk informed Boldt that he did not have a driver's license with him, nor did he

---

1. During the Motion to Suppress hearing, Officer Boldt explained that maintaining a safe environment within the government housing units is an essential part of his job. Boldt asserted that in order to perform this job, he must know all of the residents of Anna Black-ley, any regular visitors to the property and everything that happens in the area. Boldt explained that he relies on conversation with the residents as well as observation to keep himself informed as to what goes on at the Anna Blackley addition.

have a rental contract for the car. Lusk gave Boldt what he said was his driver's license number, identified himself as Sammy Johnson and gave his date of birth. Boldt ran the driver's license number and found that it did not belong to Sammy Johnson, but was the number of an entirely different individual. In addition, when Boldt ran the name Sammy Johnson and the date of birth, he found no record of any such person.

Lusk told Boldt that the car was a rental but that he did not know whether or not his name was on the rental contract as a permitted driver. Lusk explained that his brother had rented the car in Florida and then driven to Texas, at which time his brother had allowed Lusk to drive the car for the days remaining on the contract. Boldt decided to contact the rental car company to determine whether Lusk was authorized to have the car.

Boldt had the dispatcher call the rental company and inquire as to whether Sammy Johnson was listed on the contract as a driver. The rental company responded that the credit card used to rent the car had been declined, the car was nine days overdue for return and the company had placed a "repo" on the car and wanted Boldt to take possession of it. Boldt informed appellees of these facts, stated that he would be impounding the car, and asked for the keys.

Boldt asked appellees if there was any personal property in the car which they wanted returned to them before the car was impounded. Lusk replied that some of his personal property was in the passenger compartment of the car. While emptying the passenger compartment of Lusk's personal property, Boldt discovered some papers indicating that Lusk, who had identified himself as Sammy Johnson, was actually Sammey Ray Lusk.

Appellees then told Boldt that there was additional personal property, belonging to both of them, in the trunk of the car. Boldt opened the trunk to give appellees the remaining personal items and discovered plastic bags containing what appeared to be a number of rocks of crack cocaine.

Appellees argued in a pretrial motion to suppress that Boldt detained them when he parked his truck directly behind their car. Appellees further argued that Boldt did not, at that time, have the requisite objective facts to justify such a detention, and therefore, the crack cocaine found in the trunk of the car should be suppressed. The trial court ultimately granted the motion to suppress, stating that Boldt "had no lawful authority, based upon the evidence as presented, to impound the vehicle".[2]

The State appealed the trial court's decision, arguing that Boldt had evidence of a number of potential crimes being committed by appellees involving the rental car and that this evidence provided him with sufficient probable cause to seize the vehicle.

The Court of Appeals upheld the trial court's decision to suppress the evidence. *Larue,* 6 S.W.3d at 674. The court looked to Penal Code section 31.04, "Theft of Service", to determine whether the seizure was justifiable. Texas Penal Code section 31.04 states that:

> (a) A person commits theft of service if, with intent to avoid payment for service that he knows is provided only for compensation:
>
> > (3) Having control of personal property under a written rental agreement, he holds the property be-

---

**2.** Initially, the trial court denied appellees' motion to suppress. Appellees were granted a rehearing on the motion to suppress and presented new evidence of the police dispatch recording, in an attempt to bolster their claim that Boldt was performing a traffic stop when he parked behind appellees' car. After the rehearing, the trial court asked all parties to submit letter briefs addressing whether Boldt had the requisite legal justification to seize the car when he did. After examining the aforementioned evidence, the trial court suppressed the cocaine found in the trunk of appellees' car.

yond the expiration of the rental period without the effective consent of the owner of the property, thereby depriving the owner of the property of its use and further rentals.

(b) For purposes of this section, intent to avoid payment is presumed if:

    (2) The actor failed to return the property held under a rental agreement within ten days after receiving notice demanding return;

After setting out the above subsections of section 31.04, subsection (c)[3] and subsection (f)[4], which more specifically pertain to the notice requirement of subsection (b)(2), the Court of Appeals held:

> The record shows that the car was only nine days overdue when the officer took possession of it. The record does not show that notice was given in accordance with subsection (c), above, nor does it show compliance with subsection (f) ... We hold that the trial judge was correct in granting the motion to suppress. We deny the relief sought by the State herein.

*Larue,* 6 S.W.3d at 674.[5]

**3.** Texas Penal Code section 31.04(c) reads:

For purposes of Subsection (b)(2), notice shall be notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested, and addressed to the actor at his address shown on the rental agreement.

**4.** Texas Penal Code section 31.04(f) reads:

Notwithstanding any other provision of this code, any police or other report of stolen vehicles by a political subdivision of this state shall include on the report any rental vehicles whose renters have been shown to such reporting agency to be in violation of Subsection (b)(2) and shall indicate that the renting agency has complied with the notice requirements demanding return as provided in this section.

**5.** The Court of Appeals also noted the State bears the burden of showing that a warrantless search falls within a recognized exception

## II.

We granted the State's petition for discretionary review to determine whether the Court of Appeals erred in holding that the officer could not have had probable cause to believe the rental car was stolen unless he also had probable cause to believe the conditions supporting the presumption under section 31.04(b)(2) were met.

The section 31.04(b)(2) presumption provides a short-hand way to prove Theft of Service where notice has been given and the requisite number of days have passed following receipt of the notice. But Theft of Service may also be proven by other evidence that simply meets the elements of the crime as defined in section 31.04(a)(3). Nothing in the plain language of the two sections renders section 31.04(b)(2) a prerequisite to establishing the elements of the offense under section 31.04(a)(3).[6] To the extent the Court of Appeals' opinion can be read to require that the section 31.04(b)(2) presumption be met in order to prove an offense under section 31.04(a)(3), it erred in so holding. We hold that failure to meet the presumption does not mean that Theft of Service is not or cannot be proven.[7]

to the requirement for a search warrant. *Larue,* 6 S.W.3d at 674. But the trial court's ruling, and the issue as presented to the Court of Appeals, was based on whether there was probable cause to seize the vehicle, not on whether the warrantless search was justified by an exception.

**6.** The elements of an offense under section 31.04(a)(3) are (1) the actor has control of property under a written contract; (2) the actor holds the property beyond the expiration of the rental period without the effective consent of the owner; and (3) the actor's holding of the property deprives the owner of the property of its use and further rentals.

**7.** Specifically for purposes of the instant case, failure to have probable cause or reasonable suspicion to believe that the section 31.04(b)(2) presumption is met does not preclude the existence of the requisite level of suspicion to believe an offense has been committed under section 31.04(a)(3).

The State in the instant case did not rely on the section 31.04(b)(2) presumption to establish legal justification for Boldt's seizure of the car. In both the trial court and the Court of Appeals, the State argued that Boldt had the requisite reasonable suspicion to believe an offense was committed, based on evidence apart from the presumption. The State maintained that when Boldt parked behind appellees' car, the interaction that ensued was a mere encounter, thereby requiring no justification on the part of the officer.[8] The State then argued that by the time the encounter became an investigative detention, after Boldt and Lusk spoke, Boldt had reasonable suspicion to believe that the car, and possibly Lusk himself, were connected to some criminal activity.

The Court of Appeals did not address whether Boldt had reasonable suspicion or probable cause to believe an offense had occurred apart from evidence concerning the presumption, even though the State presented these arguments. Accordingly, we vacate the judgment of the Court of Appeals and remand to that court to address the State's arguments concerning the question of the officer's legal justification for seizing the car, apart from any issue as to the presumption under section 31.04(b)(2).

---

**8.** "There are three recognized categories of interaction between the police and citizens: encounters, investigative detentions and arrests." *Francis v. State,* 922 S.W.2d 176 at 178 (Tex.Crim.App.1996). To engage in an encounter with a citizen, an officer need not show any particular level of suspicion because the citizen is not under any obligation to continue speaking with the officer. *Id.* at 178. However, both an investigative detention and an arrest involve a seizure of the citizen, therefore, a certain objective level of suspicion must be shown by the officer to justify the seizure. If the interaction involves an investigative detention, the officer must show reasonable suspicion that the citizen is connected to criminal activity. If the interaction is an arrest, the officer must show probable cause to believe that the citizen has engaged in or is engaging in criminal activity. *Id.* at 178.