02-10-312-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00312-CR 

 

 


 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 
 
 
  
 V.
  
 
 
 
 
 Stacie Michelle Kerwick
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM County
Criminal Court No. 10 OF Tarrant COUNTY

----------

 

OPINION

----------

 

I.  Introduction

In
this State’s appeal, the primary issue we address is whether the trial court
abused its discretion by granting Appellee Stacie Michelle Kerwick’s motion to
suppress.  Based on the standard of review that we are required to apply, we
cannot hold that the trial court’s ruling was outside the zone of reasonable
disagreement.  Accordingly, we will affirm the trial court’s suppression
ruling.

II. 
Factual Background

          At
around 12:19 a.m., Fort Worth Police Officer Jeffrey J. Bradford was dispatched
to a bar on North Main Street in Fort Worth in response to a call about several
people fighting in front of the bar.  When Officer Bradford arrived at the bar,
several people were standing outside in front of the bar.  Officer Bradford
made contact with the person he believed to be the person who had called the
police.  The person was the owner of a damaged vehicle.  That person pointed to
a vehicle parked on the street across from the bar and said, “There they are
right there.  There they are, there they are.”  Officer Bradford walked over to
the vehicle as it started moving northbound on the street and stopped the
vehicle by yelling at the driver, ordering her to stop.  Officer Bradford
testified that he “believed that they—at that point they were involved in an
offense.”  

          Appellee
was charged with driving while intoxicated.  She filed a motion to suppress. 
At the suppression hearing, Officer Bradford was the only witness to testify,
and no exhibits were admitted into evidence.  The State’s entire questioning of
Officer Bradford concerning his initial investigatory detention of Appellee­—after
predicatory questions establishing Officer Bradford’s employment history and
that he was dispatched to the bar at 12:19 a.m.—was as follows:

Q.  And why were you
dispatched there?

 

A.  In reference to a
fight.

 

Q.  And did you
respond to that?

 

A.  I did.

 

Q.  What did you know
about that fight before you got to that location?

 

A.  The details
stated several people were fighting out front in front of the bar.

 

Q.  And when you got
there did you see several people outside?

 

A.  Yeah.  There were
several.

 

Q.  And did you make
contact with anyone?

 

A.  Yes, the—I
believe it was the person who called the police.  There was a vehicle that was
damaged there.  He was the owner of the vehicle that was damaged.

 

Q.  Okay.  And did
you see the damaged vehicle there?

 

A.  I did.

 

Q.  And did you speak
to that person?

 

A.  Yes.

 

Q.  And do you know
who that person was?

 

A.  I have it written
down here.

 

Q.  So you—you do
have it written down?

 

A.  Yes.

 

Q.  So that person
was identified to you?

 

A.  Right.

 

Q.  And what did—what
did that person say to you?

 

A.  He pointed at a
vehicle, which was parked across the street and pointed at it and said, “There
they are right there.  There they are, there they are.”

 

Q.  When you say
across the street, where was that vehicle parked?

 

A.  Directly across
from the [] bar on the east side of the roadway, facing northbound.

 

Q.  Okay.  And so is
this—is this in the Stockyards?

 

A.  It is.

 

Q.  And is that—was
that car parked in the street or in the parking lot?

 

A.  It was in the
street.

 

          . . . .

 

Q.  Okay.  So the
witness said, “There they are,” and what did you do?

 

A.  I—I was on foot
at this point.  I walked over to the vehicle as it started moving northbound. 
At that point I stopped it.  

 

Q.  How did you stop
it?

 

A.  Ordered the
driver to stop the vehicle.  I yelled at her.

 

Q.  Why did you do
that?

 

A.  Because I
believed that they—at that point they were involved in an offense.

 

Q.  And which offense
do you believe they were involved in?

 

A.  An assault,
criminal mischief, or both.

 

The
trial court granted Appellee’s motion to suppress and, upon request by the
State, issued findings of fact and conclusions of law.[1] 


III. 
Standard of Review

In
review of a trial court’s ruling on a motion to suppress, we apply an abuse of
discretion standard and overturn the trial court’s ruling only if it is outside
the zone of reasonable disagreement.  Martinez v. State, Nos.
PD-1238-10, PD-1239-10, 2011 WL 2555712, at *2 (Tex. Crim. App. June 29, 2011).
 In reviewing the trial court’s decision, we do not engage in our own factual
review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State,
214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to
the trial court’s rulings on (1) questions of historical fact, even if the
trial court’s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application-of-law-to-fact questions
that turn on an evaluation of credibility and demeanor.  We apply a bifurcated
standard of review, giving almost total deference to a trial court’s
determination of historic facts and mixed questions of law and fact that rely
upon the credibility of a witness and applying a de novo standard of review to
pure questions of law and mixed questions that do not depend on credibility
determinations.  Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App.
2007); Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006);
Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson
v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  

IV. 
Reasonable Suspicion for an Investigative Detention

A. 
The Law

          To
suppress evidence on an alleged Fourth Amendment violation, the defendant bears
the initial burden of producing evidence that rebuts the presumption of proper
police conduct.  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005).  A defendant satisfies this burden by establishing that a search or
seizure occurred without a warrant.  Id.  Once the defendant has made
this showing, the burden of proof shifts to the State, which is required to
establish that the seizure was conducted pursuant to a warrant or was reasonable. 
Id.  

          A
temporary or investigative detention is a seizure.  Francis v. State,
922 S.W.2d 176, 178 (Tex. Crim. App. 1996); Josey v. State, 981 S.W.2d
831, 838 (Tex. App.—Houston [14th Dist.] 1988, pet. ref’d).  An investigative
detention occurs when an individual is encountered by a police officer, yields
to the officer’s display of authority, and is temporarily detained for purposes
of an investigation.  Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim.
App. 1995).  Because an investigative detention is a seizure, reasonable
suspicion must be shown by the officer to justify the seizure.  State v.
Larue, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). 

          An
officer conducts a lawful temporary detention when he has reasonable suspicion
to believe that an individual is violating the law.  Ford, 158 S.W.3d at
492.  “‘[T]he police officer must be able to point to specific and articulable
facts which, taken together with rational inferences from those facts,
reasonably warrant that intrusion.’”  Davis v. State, 947 S.W.2d 240,
242 (Tex. Crim. App. 1997) (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.
Ct. 1868, 1880 (1968)).   The articulable facts must show unusual activity,
some evidence that connects the detainee to the unusual activity, and some
indication that the unusual activity is related to a crime.  Martinez, 2011
WL 2555712, at *2.  Articulable facts must amount to more than a mere
inarticulate hunch, suspicion, or good faith suspicion that a crime was in
progress.  Crain v. State, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).

In
deciding whether reasonable suspicion existed, we look at the facts available
to the officer at the time of the detention.  Id.  Whether the officer’s
suspicion to believe that an individual is violating the law is reasonable is
evaluated based on “an objective standard that disregards any subjective intent
of the officer making the stop and looks solely to whether an objective basis
for the stop exists.”  Ford, 158 S.W.3d at 492.  We are to take into
account the totality of the circumstances in order to determine whether
reasonable suspicion existed for the stop.  Martinez, 2011 WL 2555712,
at *2. 

The
totality of the circumstances includes both the content of the information
possessed by the police and its degree of reliability.  Alabama v. White,
496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990); Martinez, 2011 WL
2555712, at *2; Blevins v. State, 74 S.W.3d 125, 130–31 (Tex. App.—Fort
Worth 2002, pet. ref’d).  In determining whether information possessed by
police rises to the level of reasonable suspicion, the quality of the
information possessed is weighed against the quantity of information possessed.
 See Rojas v. State, 797 S.W.2d 41, 43 (Tex. Crim. App. 1990) (balancing
quality of information against quantity of information in the probable cause
context); Blevins, 74 S.W.3d at 130.  That is, a weakness in the quality
of the information possessed may be overcome by the requisite quantity of
corroborating facts demonstrating the reliability of the information.  See
Smith v. State, 58 S.W.3d 784, 790 (Tex. App.—Houston [14th Dist.] 2001, pet.
ref’d) (balancing quality of information against quantity of information in the
investigative stop context).  Conversely, when the reliability of the
information is increased, less corroboration is necessary.  See Martinez, 2011
WL 2555712, at *2; State v. Sailo, 910 S.W.2d 184, 188 (Tex. App.—Fort
Worth 1995, pet. ref’d).

B. 
Application of the Law to the Present Facts

          The
State raises six points in this appeal; each point alleges that the trial court
erred by granting Appellee’s motion to suppress.[2]  The State argues the six
points together in its brief, and we likewise address them together in this
opinion.

          The
State stipulated that Officer Bradford’s investigative detention of Appellee was
made without a warrant.  Thus, the burden of proof shifted to the State to
produce evidence that Officer Bradford’s seizure of Appellee was reasonable;
that is, that Officer Bradford possessed reasonable suspicion to believe that
Appellee was violating the law.  See Ford, 158 S.W.3d at 492.  Officer
Bradford was the only witness to testify at the suppression hearing, and no
exhibits were admitted into evidence, so we examine Officer Bradford’s testimony
to determine whether the State elicited from him specific and articulable facts
that reasonably warranted his investigative detention of Appellee.  See id.;
Davis, 947 S.W.2d at 242.  In doing so, we give almost total deference to the
trial court’s determination of historic facts and mixed questions of law and
fact that rely upon Officer Bradford’s credibility.  See Martinez, 2011
WL 2555712, at *2.

          The
facts known to Officer Bradford when he initiated the warrantless seizure of
Appellee—at least the facts that are set forth in the record before us—were that
(1) someone had called the police to report people fighting in front of a bar
on the north side of Fort Worth; (2) Officer Bradford was dispatched to the
scene at 12:19 a.m.; (3) people were standing in front of the bar when he
arrived; (4) he spoke to a person whom he believed was the person who had
called the police; (5) that person had a damaged vehicle; and (6) that person
pointed to a vehicle parked on the street across from the bar and said, “There
they are right there.  There they are, there they are.”  As the vehicle was
driving away, Officer Bradford initiated a temporary investigative detention by
yelling at the driver, Appellee, and ordering her to stop.

The
State points out that the person whom Officer Bradford believed had called the
police remained at the scene and spoke to Officer Bradford in a face-to-face
encounter and argues that the totality of the circumstances are sufficient to
support Officer Bradford’s suspicion that he “believed that they [the people in
the vehicle] -- at that point they were involved in an offense. . . .  An
assault, criminal mischief, or both.”  The record before us, however, does not
indicate what, if anything, Officer Bradford said to the person before the
person said, “There they are right there.  There they are, there they are.” 
The record does not indicate what, if anything, the person said to Officer
Bradford before the person said, “There they are right there.  There they are,
there they are.”  In fact, the record does not establish that the person who
said, “There they are right there.  There they are, there they are,” was the
person who called the police.  In finding of fact number 4, the trial court
found only that “Officer Bradford made contact with an unidentified person who
Officer Bradford believed was the individual who called the police.”  [Emphasis
added.]  Thus, the trial court found only that Officer Bradford believed
this was the individual who called the police, not that it was in fact the
person who had called the police.  Officer Bradford never testified concerning
the name of the person at the scene or the name of the person who had called the
police.

The
record before us does not indicate when Officer Bradford arrived at the bar. 
He was dispatched at 12:19 a.m., but the record does not indicate whether he
arrived ten minutes after he was dispatched or one hour after he was
dispatched.  The record does not indicate how Officer Bradford determined that
the person who said, “There they are right there.  There they are, there they
are,” was the owner of a damaged vehicle.  The record does not indicate whether
the person’s vehicle was already damaged when the person arrived at the bar,
was damaged at the bar, was damaged during the fighting, or was in an accident
at or near the bar before Officer Bradford arrived at the bar.  Thus, in
finding of fact number 11, the trial court found that Officer Bradford “believed
that the occupants of the vehicle were involved in either an assault, criminal
mischief, or both.”  [Emphasis added.]  

In
short, the record before us simply contains no facts to enable either the trial
court or this court to objectively evaluate either Officer Bradford’s belief
that the person who said, “There they are right there.  There they are, there
they are,” was the person who had called the police or his belief that
Appellee was “involved in an offense. . . [—a]n assault, criminal mischief, or
both.”  No facts exist in the record to enable the trial court or this court to
assess whether either of these beliefs by Officer Bradford were objectively
reasonable.  See Ford, 158 S.W.3d at 493.  Without specific, articulable
facts, a court has no means of assessing whether an officer’s opinion is
objectively reasonable.  Id.  Without specific, articuable facts, a
detention cannot be subjected to the more detached, neutral scrutiny of a judge
who must evaluate the reasonableness of a particular seizure in light of the
particular circumstances.  Id.  And when such a stop is not based on
objective criteria, the risk of arbitrary and abusive police practices exceeds
tolerable limits.  Id.  Allowing a police officer’s opinion to suffice
in specific facts’ stead eviscerates Terry’s reasonable suspicion
protection.  Id.

The
State nonetheless argues that because the person that Officer Bradford believed
had called the police remained at the scene and spoke to Officer Bradford in a
face-to-face encounter, Officer Bradford’s beliefs were reasonable.  As set
forth above, no facts exist in the record—as opposed to possibly in
Officer Bradford’s mind—to substantiate Officer Bradford’s belief that this
person was the person who had called the police.  Assuming, however, enhanced
reliability of the statement, “There they are right there.  There they are,
there they are,” based on the fact that the statement was made face-to-face
between a bystander and Officer Bradford, the substance of the information
provided—at least as elicited from Officer Bradford in the record before us—does
not indicate any unusual activity, does not connect Appellee to any unusual
activity, and does not indicate that any unusual activity is related to crime. 
See Martinez, 2011 WL 2555712, at *2; accord Derichsweiler v.
State, No. PD-0176-10, 2011 WL 255299, at *6 (Tex. Crim. App. Jan. 26)
(holding witnesses’ statements to officer indicated unusual activity, connected
Derichsweiler to the unusual activity, and related to future criminal activity),
cert. denied, 2011 WL 4530673 (2011).[3]  The trial court therefore
concluded:

The vague statement ‘there
they are’ made by an unidentified person did not provide Officer Bradford with
any specific articulable facts to form reasonable suspicion that some activity
out of the ordinary was occurring, or had occurred, or that the detainee had a
connection with the unusual activity.  “There they are” does not identify who “they”
are, nor what crime, if any, “they” had committed.

 

Deferring
as we must to the historical facts found by the trial court and mixed questions
of law and fact that rely upon the credibility of Officer Bradford, and applying
a de novo standard of review to the pure questions of law presented and to the mixed
questions not depending on Officer Bradford’s credibility, we cannot hold that
the trial court acted outside the zone of reasonable disagreement in granting
Appellee’s motion to suppress.  See Martinez, 2011 WL 2555712, at
*2.  The State failed to meet its burden at the suppression hearing to adduce
facts proving under an objective standard, disregarding any subjective intent
of Officer Bradford, that Officer Bradford’s suspicion or belief that Appellee
was violating the law was reasonable.  See Ford, 158 S.W.3d at 493.  Consequently,
the trial court’s suppression ruling comports with the requisites of Terry
v. Ohio, the Fourth Amendment, and article I, section 9 of the Texas constitution. 
We overrule the State’s six points.

V. 
Conclusion

          Having
overruled the State’s points, we affirm the trial court’s order granting
Appellee’s motion to suppress.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and MCCOY, JJ.

 

MCCOY,
J. concurs without opinion.

 

PUBLISH

DELIVERED:  November 3, 2011

 

 




































[1]The trial court’s findings
of fact and conclusions of law are attached to this opinion. 





[2]The State’s points allege
that the trial court erred by granting Appellee’s motion to suppress because
(1) the trial court erroneously determined that Officer Bradford did not
possess reasonable suspicion for an investigative stop; (2) the trial court’s
ruling runs afoul of Terry v. Ohio; (3) the trial court’s ruling runs
afoul of Texas Court of Criminal Appeals’s case law, including Derichsweiler
v. State; (4) the trial court’s ruling violates the Fourth Amendment; (5)
the trial court’s ruling violates article I, section 9 of the Texas
constitution; and (6) the trial court’s ruling was erroneous because Officer
Bradford’s decision to stop Appellee was objectively reasonable based on the
totality of the circumstances.  





[3]In Derichsweiler,
the court of criminal appeals held that the witnesses’ call to police and
face-to-face recitation to police at the scene that around 8 p.m., a man had
driven by them twice while they were in a McDonald’s drive-through lane, was “looking
straight at [them],” “kind of grinning,” “for between thirty seconds to a
minute,” had driven into the adjacent Wal-Mart parking lot, and was engaging in
similar behavior there constituted “specific, articulable facts that, combined
with reasonable inferences to be derived from those facts, would lead to the
reasonable conclusion that the appellant was committing or soon would be
engaged in some type of criminal activity.”  2011 WL 255299, at *1, *5.  Thus,
in Derichsweiler, witnesses reported to the police the behavior that
they had personally observed the defendant engage in.  See id. at *1. 
Here, the person at the scene either did not report to Officer Bradford what
conduct he had observed Appellee engage in, or the State simply failed to
elicit this testimony from him.  Either way, this case is distinguishable from Derichsweiler
because, unlike the record in Derichsweiler, the record in this case
contains no testimony by Officer Bradford as to what conduct, if any, the
person at the scene supposedly observed Appellee engage in.