

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00204-CR

_____

KENNETH GENE JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR12-294

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter
Dissenting Opinion by Justice Moseley

# MEMORANDUM OPINION

Kenneth Gene Jackson was convicted of possession of less than one gram of a controlled substance, methamphetamine, sentenced to two years' confinement in a state jail facility, and fined $10,000.00. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). His appeal alleges improper police conduct in the detention and search that led to his arrest. We affirm the judgment of the trial court.

## I. Facts

While on patrol after dark,[1] Trooper Ricardo Fabbiani with the Texas Department of Public Safety (DPS) observed three automobiles parked at a closed gasoline station in a high-crime area. Two of the vehicles hoods were raised. Fabbiani also observed three men walking at a fast pace from behind the gasoline station.[2]

After parking his car next to the three vehicles and sitting in the car for approximately forty seconds, Fabbiani approached the three men and asked for their identification. Fabbiani described the suspects as "[v]ery nervous." Fabbiani testified that he believed it was necessary to conduct a weapons frisk search of the men because they "kept walking around," it was dark, one of the vehicles contained antiques and unopened tools, and Jackson kept placing his hands in his pockets despite repeated orders not to do so. Fabbiani ordered the three men to go in front of their cars, and they complied. One of the men, Curtis Davis, consented to a search of his person;

---

[1]We have not been directed to where the record establishes the precise time of the encounter.

[2]An audio/video recording of the scene captured by the dashboard camera in Fabbiani's patrol car indicates the presence of a fourth person—a female. Presumably, the female was inside one of the cars during the following events, though the testimony at the suppression hearing does not clarify this issue. At trial, Fabbiani testified that he did not see the female when conducting the search and did not discover her presence until after arresting Jackson.

while conducting this search, Fabbiani discovered a "meth pipe" and placed Davis under arrest. Fabbiani was informed by dispatch that another of the men, Timothy Griffin, was the subject of an outstanding arrest warrant stemming from unpaid child support; as a result, Fabbiani arrested Griffin, placed him in handcuffs, and lawfully searched him incident to the arrest. After searching Davis and Griffin and without requesting consent from Jackson, Fabbiani performed a "*Terry* frisk"[3] on Jackson and discovered crystal methamphetamine in his shirt pocket.

Prior to trial, Jackson filed a motion to suppress the evidence obtained through Fabbiani's frisk search, claiming that the search was illegally conducted and that, consequently, any evidence seized during the search was fruit of the poisonous tree. Following jury selection and a hearing held outside the jury's presence, the trial court denied Jackson's motion to suppress. At trial, the parties introduced evidence concerning Jackson's suppression arguments,[4] and Jackson obtained an Article 38.23 jury instruction on the legality of the seizure.[5]

---

[3]*See Terry v. Ohio*, 392 U.S. 1 (1968) (holding upon law enforcement officer's reasonable belief that individual under investigatory detention is armed and dangerous, officer may perform limited frisk or pat-down search for weapons without violating Fourth Amendment).

[4]In reviewing a trial court's ruling on a motion to suppress, we generally consider only the evidence adduced at the suppression hearing since the ruling under review was based on the suppression hearing evidence rather than the full body of evidence introduced at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). When the legality of the seizure is relitigated at trial, however, consideration of relevant trial testimony is appropriate in our review. *Id*. An issue is relitigated when the State introduces suppression issues, without objection, and the defense participates "in the relitigation of the issue in its cross-examination." *Id*. Although Jackson had secured a motion in limine "that we had a suppression hearing," Jackson did not object to relitigation of the suppression issues. *See Kay v. State*, 340 S.W.3d 470, 476 (Tex. App.—Texarkana 2011, no pet.) ("A motion in limine will not suffice as an objection at trial."). In this case, the State introduced evidence on the suppression issues without objection, and the defense conducted cross-examination on the suppression issues. Therefore, we conclude that the issue was relitigated and will consider the trial evidence.

[5]*See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005).

3

On appeal, Jackson claims that the evidence seized as a result of the search should have been suppressed because Fabbiani lacked reasonable suspicion for the temporary investigatory detention of Jackson and lacked reasonable grounds to conduct a *Terry* frisk.

## II.    Standard of Review

A trial court's decision on a motion to suppress evidence is reviewed under a bifurcated standard of review, deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). The appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The court also affords such deference to a trial court's ruling on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. The appellate court, though, reviews de novo those questions not turning on credibility and demeanor. *Id*.

The record contains no findings of fact.[6] When there is no request for the trial court to enter findings of fact, we are instructed to assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *State v. Ross*,

---

[6]When a suppression hearing involves issues other than the voluntariness of a defendant's statement, a trial court is under no duty to file findings of fact unless specifically requested by the defendant. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006); *see State v. Mendoza*, 365 S.W.3d 666, 670–71 (Tex. Crim. App. 2012). We have been directed to no location in the record where Jackson requested findings of fact.

32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

### III. The Initial Interaction Between Fabbiani and Jackson Was an Encounter

Not every interaction between a police officer and a citizen implicates the Fourth Amendment to the United States Constitution. U.S. CONST. amend. IV; *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). There are three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests. *Wade v. State*, No. PD-1710-12, 2013 Tex. Crim. App. LEXIS 1314, at *7 (Tex. Crim. App. Sept. 11, 2013); *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). The Fourth Amendment does not require any suspicion for a police officer to merely approach an individual in public to ask questions. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). An encounter is a purely consensual interaction which a citizen may terminate at any time. *Saldivar v. State*, 209 S.W.3d 275, 281 (Tex. App.—Fort Worth 2006, no pet.). Encounters are consensual as long as the person would feel free to go about his or her business. *Wade*, 2013 Tex. Crim. App. LEXIS 1314, at *8; *Hunter*, 955 S.W.2d at 104; *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *California v. Hodari D.*, 499 U.S. 621, 628 (1991). "Even if the officer did not tell the citizen that the request for identification or information may be ignored, the fact that the citizen complied with the request does not negate the consensual nature of the encounter." *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011).

5

Fourth Amendment jurisprudence recognizes a significant distinction between a police officer stopping a moving vehicle[7] and a police officer approaching a stationary suspect. *See Bostick*, 501 U.S. at 434–35; *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999); *State v. Garcia-Cantu*, 253 S.W.3d 236, 245 n.43 (Tex. Crim. App. 2008). When a police officer approaches a stationary suspect, the interaction may merely be a consensual encounter.

To determine whether the interaction was an encounter or a temporary detention, we must determine whether a seizure occurred in this case. A seizure of the person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen and the citizen has submitted to that authority. *Bostick*, 501 U.S. at 434; *Wade*, 2013 Tex. Crim. App. LEXIS 1314, at *15; *Castleberry*, 332 S.W.3d at 466–67. Such a determination is made based on the totality of the circumstances surrounding the event. *Bostick*, 501 U.S. at 439; *Castleberry*, 332 S.W.3d at 467. The crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his or her business. *Bostick*, 501 U.S. at 439; *Castleberry*, 332 S.W.3d at 467; *Velasquez*, 994 S.W.2d at 679; *Hunter*, 955 S.W.2d at 104.

The initial interaction in this case was an encounter. Jackson was already stationary when approached by Fabbiani. The record contains no evidence that Jackson submitted to any display of authority, such as activation of overhead lights. Fabbiani testified that, when he

---

[7]In most instances, stopping a moving vehicle will involve a show of authority by the police officer and submission by the suspect to that authority. Therefore, a seizure has occurred and a certain objective level of suspicion must be shown by the officer to justify the seizure. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). The officer must show reasonable suspicion that the citizen is connected to criminal activity. *Id*.

6

arrived at the scene, the suspects "continue[d] to work and disregard[ed] the fact that [he was] sitting there, a law enforcement officer." "[W]hen a suspect fails to yield to a show of physical force and there has been no actual use of physical force, then there is no seizure." *Castleberry*, 332 S.W.3d at 467. Considering the totality of the circumstances, the initial interaction between Fabbiani and Jackson did not involve a seizure; rather, the initial interaction was merely a consensual encounter.

## IV.     Reasonable Suspicion to Detain

Jackson argues that Fabbiani elevated the interaction to an arrest when he ordered Jackson to position himself in front of the vehicles. The State denies that Fabbiani's order had any effect on the nature of the interaction. Alternatively, the State argues that Fabbiani had reasonable suspicion to support a temporary detention. "The question of whether the particular facts show that a consensual encounter has evolved into a detention is a legal issue that is reviewed de novo." *Wade*, 2013 Tex. Crim. App. LEXIS 1314, at *9. Our de novo review leads us to conclude that Fabbiani's order elevated the encounter to an investigative detention; however, we also conclude that Fabbiani had developed reasonable suspicion by the time he issued the order.

In *Wade*, the Texas Court of Criminal Appeals noted that a driver's submission to an officer's order to get out of the vehicle for a frisk elevated what was initially an encounter to an investigatory detention. *Id.* at *15. The court stated, "At that moment appellant was detained under the Fourth Amendment." *Id*. The facts of this case are similar. At the moment Jackson submitted to Fabbiani's order that he move to the front of his vehicle, Jackson was detained

under the Fourth Amendment.  The intent of Fabbiani's order was obviously to reposition the suspects to facilitate an investigatory detention.  Similar to *Wade*, a reasonable person in Jackson's position would not have felt at liberty to ignore Fabbiani's order.  Further, Jackson submitted to Fabbiani's authority by complying with the order.  At the moment Jackson repositioned himself in compliance with the order, the interaction became an investigatory detention.

The next question is whether the investigatory detention was reasonable.  A temporary seizure or detention must be justified by reasonable suspicion.  *Id.* at *11; *Larue*, 28 S.W.3d at 553 n.8.  To demonstrate reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry*, 392 U.S. at 21.  These facts must be more than a mere hunch or suspicion.  *Davis*, 947 S.W.2d at 244.  Whether the officer's suspicion was reasonable is evaluated under "an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists."  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  The specific, articulable facts, along with rational inferences from those facts, must allow the officer to reasonably conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.  *United States v. Sokolow*, 490 U.S. 1, 7–10 (1989).  "[T]he question of whether a certain set of historical facts gives rise to reasonable suspicion is reviewed de novo."  *Wade*, 2013 Tex. Crim. App. LEXIS 1314, at *13.

8

When considered collectively along with all rational inferences flowing therefrom, the specific, articulable facts confronting Fabbiani allow for the reasonable conclusion that Jackson and his companions actually were, had been, or soon would be engaged in criminal activity.[8] The area where Fabbiani encountered the suspects was a high-crime area, the suspects were very nervous, Fabbiani observed the suspects walking quickly from behind a closed gasoline station at night, and Fabbiani observed antiques and unopened tools in the trunk of one of the cars.[9] Fabbiani testified at trial that these antiques and unopened tools made him suspect that a burglary may have occurred.[10]

We acknowledge that some of these specific, articulable facts, when considered in isolation, could be viewed as consistent with innocent activity. However, an act that is innocent, when considered by itself can provide the basis for a showing of reasonable suspicion when considered with other acts. *Sokolow*, 490 U.S. at 9–10. The Texas Court of Criminal Appeals has further explained,

> The facts that an officer relies on to raise suspicion that illegal conduct is afoot need not be criminal in themselves; "they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." But the totality of the suspicious circumstances that an officer relies on

---

[8]The State urges us to consider that Jackson kept putting his hands in in his pockets and that Jackson went to a vehicle where he could have armed himself. Because these events occurred after Jackson submitted to Fabbiani's order, they cannot be considered in determining whether Fabbiani had reasonable suspicion to detain Jackson. Because these actions occurred prior to the *Terry* frisk, we will consider them when determining whether Fabbiani had reasonable grounds for the *Terry* frisk.

[9]Fabbiani can be heard on the audio/video recording of the events asking some questions about items in the trunk of a car approximately thirty seconds before ordering the suspects to reposition themselves in front of the cars.

[10]Describing the contents of this trunk, Fabbiani stated, "[There was] silverware in there that looked like it belonged to my great-grandmother." Regarding the tools, he stated, "[They] weren't even opened, wrapped in plastic."

9

"must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them."

*Wade*, 2013 Tex. Crim. App. LEXIS 1314, at \*\*17–18 (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991) (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)). "[T]he fact that a car is parked in close proximity to a business that is closed for the day[] is not, in and of itself, suspicious; instead, it is only a factor to consider in deciding whether there is reasonable suspicion." *Klare v. State*, 76 S.W.3d 68, 74 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The time of day is insufficient, by itself, to create reasonable suspicion but can be considered as a factor along with other circumstances raising suspicion. *Crain v. State*, 315 S.W.3d 43, 53 (Tex. Crim. App. 2010). Similarly, "[n]ervousness is not sufficient to establish reasonable suspicion, but nervous or evasive behavior is a relevant factor in determining reasonable suspicion . . . ." *Wade*, 2013 Tex. Crim. App. LEXIS 1314, at \*18.

Reasonable suspicion may be "'based on commonsense judgments and inferences about human behavior.'" *Castleberry*, 332 S.W.3d at 467 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). Considered collectively, the specific, articulable facts on which Fabbiani relied formed a sufficient basis for his reasonable suspicion that Jackson and his companions actually were, had been, or soon would be engaged in criminal activity.

## V.    Reasonable Grounds for the *Terry* frisk

The next issue is whether Fabbiani had sufficient grounds to fear for his safety, thereby justifying a *Terry* frisk. "If an officer is justified in believing that a person whose suspicious behavior he is investigating is armed, he may frisk that person to determine if the suspect is, in fact, carrying a weapon and, if so, to neutralize the threat of physical harm." *Wade*, 2013 Tex.

10

Crim. App. LEXIS 1314, at *13 (citing *Terry*, 392 U.S. at 24); *see Castleberry*, 332 S.W.3d at 467. If sufficient grounds exist, a *Terry* frisk can be conducted even during a consensual encounter. *Castleberry*, 332 S.W.3d at 467 (approving *Terry* frisk conducted during encounter). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

In *Castleberry*, the Texas Court of Criminal Appeals upheld a *Terry* frisk when Castleberry reached for his waistband at three in the morning in a high-crime area. *Castleberry*, 332 S.W.3d at 469. The court concluded that a reasonably prudent person under the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.*

Similar to *Castleberry*, Jackson reached for his pockets while in a high-crime area late at night. It was dark and there were three suspects that "kept walking around." The three suspects had not explained why Fabbiani had seen them walking from behind the closed gasoline station. Fabbiani testified that he was "more concerned about weapons" with Jackson than the other suspects because he "had to tell him numerous times to keep his hands out of his pockets,"[11] and Jackson walked around to the driver's door of one of the vehicles. Fabbiani could not see what Jackson was doing by the door and was concerned Jackson might have gotten a weapon. We conclude that a reasonably prudent person would have concluded, under the circumstances, that his safety may have been in danger.

---

[11]The audio/video recording corroborates that, on a least three occasions, Fabbiani asked one of the men to keep his hands out of his pockets.

**VI.     Deference to the Trial Court's Implied Findings**

The final issue is whether Fabbiani's frisk of Jackson exceeded its permissible scope.  In general, the scope of a *Terry* frisk is "'strictly circumscribed,'" and its intensity and duration should be limited to determining whether the suspect has a weapon.  *See Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993) (quoting *Terry*, 392 U.S. at 26).  The United States Supreme Court has recognized, however, that the limited scope of a *Terry* frisk is not without exception.  Specifically, the court has held that an item of contraband discovered during a *Terry* frisk that is immediately identifiable through "plain feel" alone may be seized without running afoul of the Fourth Amendment.  *Id.* at 375–76.  Once a police officer has determined that the object is not a weapon, the officer may not continue to manipulate the suspect's clothing in an attempt to identify the object.  *Id.* at 378.  The Texas Court of Criminal Appeals has explained the reason for the "plain feel" exception is that no additional privacy interest is implicated when the identity of the object is already plainly known based on the officer's sense of touch.  *Carmouche*, 10 S.W.3d at 330.

Describing the characteristics of crystal methamphetamine, Fabbiani testified, "[I]t's got hard edges like a diamond or a crystal and looks just like -- very similar to a crystal."  Fabbiani also testified that he could identify crystal methamphetamine by simply touching it.  Specifically, Fabbiani testified, "[Y]ou can feel the jar, the sharp edges on it through the plastic typically, because it's not like sand.  Crystal meth isn't like sand.  It's going to have some rough edges all over, so it's something you can feel."

The record contains evidence that the crystal methamphetamine in Jackson's pocket was immediately apparent to Fabbiani. Although the frisk of Jackson cannot be seen on the audio/video recording, Fabbiani testified that he merely patted Jackson down for weapons. He further indicated that, if he was searching somebody, he would "do a lot more thorough search." Fabbiani described the frisk of Jackson as follows:

> Q. I want to talk about that. How were you -- when you were doing the pat-down search, what did you feel in his pocket?
>
> A. I immediately ran my hand down, felt his Ziploc baggy and the jagged edges of the crystal meth in there.
>
> Q. Okay. Now, did you manipulate that bag in any way? Did you rub it, poke it, prod at it, anything to be able to determine what was inside?
>
> A. No, sir. As soon as I felt it, I knew.

This Court and the El Paso Court of Appeals have deferred to trial court findings in similar cases. *See Merrill v. State*, No. 08-09-00216-CR, 2010 Tex. App. LEXIS 7400 (Tex. App.—El Paso Sept. 8, 2010, pet. ref'd) (not designated for publication); *Stigger v. State*, No. 06-06-00248-CR, 2007 Tex. App. LEXIS 5933 (Tex. App.—Texarkana July 26, 2007, no pet.) (mem. op., not designated for publication). In *Merrill*, the appellant claimed that his Fourth Amendment rights had been violated by law enforcement's seizure of narcotics discovered in his pocket during a *Terry* frisk. *Merrill*, 2010 Tex. App. LEXIS, at *6. Summarizing the facts of the case, the El Paso Court stated, "The Trooper noticed a large bulge in Appellant's pocket, the Trooper recognized that the bulge was narcotics, Appellant admitted a recent arrest for marijuana possession, and Appellant stated that he might have a 'smoke pipe' in his pocket." *Id.* On these facts, the court could not conclude that the trial court's denial of Merrill's motion to suppress the

13

seized narcotics constituted an abuse of discretion. *Id.* In *Stigger*, this Court deferred to a trial court's finding that a police officer identified a chunk of crack cocaine based solely on plain feel. *Stigger*, 2007 Tex. App. LEXIS 5933, at *20. This Court reasoned, "[A]s the trial court was in the best position to gauge witness credibility, we may not second-guess the trial court's finding that the officer's testimony was credible." *Id.*

Likewise, we feel compelled to defer to the trial court's finding in this case. While it seems unlikely that 0.42 grams of methampethamine can be identified through both a shirt pocket and a plastic bag by merely touching the object, the Texas Court of Criminal Appeals instructs that we must afford "almost total deference" to the trial court's findings of historical facts. *See Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Fabbiani's testimony is evidence such an identification occurred by plain feel and without manipulation. The record does not conclusively establish that such an identification cannot occur.[12] We did not hear the trooper's testimony or observe his demeanor. Apparently, the trial court believed Fabbiani's testimony that he could identify the nature of the substance by merely passing his fingers across it momentarily while searching for weapons. We will not substitute our judgment for that of the trial court on this credibility issue.

---

[12]We note that Eloisa Perez Esparza, a chemist with the DPS, when asked if she could identify a substance as crystal methamphetamine based solely on feel, responded, "Probably not." A chemist, though, receives more training in identifying chemical substances in the laboratory than he or she receives in field identification. One could argue Trooper Fabbiani had more experience and training concerning field identifications.

14

For the reasons stated, we affirm the judgment of the trial court.



Jack Carter
Justice



DISSENTING OPINION


I must respectfully dissent from the majority in this case because I cannot join my colleagues in apparently having granted absolute deference to the trial court's implied findings of fact. Some of the required findings are far too improbable to be believed.

At the stage of the encounter that Trooper Ricardo Fabbiani conducted his *Terry*[13] frisk, he would have been required to rather certainly identify the object as contraband rather than simply raising his suspicion that the object in Jackson's pocket was contraband. *See Minnesota v. Dickerson*, 508 U.S. 366, 378 (1993); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). The incriminating character of the contraband must be "immediately apparent." *Dickerson*, 508 U.S. at 375. Otherwise, a police officer must have probable cause to search a suspect's pockets for nonweapon contraband or other evidence. *Baldwin v. State*, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009) ("[T]he officer's conduct of reaching into appellant's pocket—even under a valid investigative detention—was an illegal search unless there existed some exception to the usual probable cause requirement.").

---

[13]*Terry v. Ohio*, 392 U.S. 1 (1968).

15

Granting almost total deference to findings by the trial court does not mean the trial court's findings or implied findings of historical fact are granted absolute deference. The act of granting almost total deference does not mean that we are to totally accept the absolutely incredible as true. In recent years, the Texas Court of Criminal Appeals has clarified what they mean by "almost total deference." "Almost total deference" means, "The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *Wade v. State*, No. PD-1710-12, 2013 Tex. Crim. App. LEXIS 1314, at *6 (Tex. Crim. App. Sept. 11, 2013). Further, the findings of historical fact must be "reasonably grounded in the record." *Id.* at *7. The court has held that findings of fact inconsistent with conclusive evidence may be disregarded. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) (disregarding findings contrary to videotape); *Carmouche*, 10 S.W.3d at 332 (disregarding implied findings contrary to videotape).

I do not believe we are required to defer to the historical finding at issue here. That would require us to believe that Fabbiani could (under the circumstances described) identify the substance as contraband based on touch and without manipulation. To reiterate, Fabbiani testified that he could tell by a mere pat-down search that a substance inside a plastic baggie situated in a shirt pocket was crystal methamphetamine as opposed to any other substance that can take a crystalline form. He testified that he neither rubbed it, nor poked it, nor did anything other than pat the outside of that pocket. Yet, he could still determine that the substance inside the baggie inside the pocket was crystal methamphetamine. If the trier of fact could believe

16

Fabbiani in this conclusion, he could also believe Fabbiani was telling the truth if he were to also testify that he could leap tall buildings in a single bound.

Fabbiani's seemingly superhuman ability to identify the substance is simply unbelievable. Eloisa Perez Esparza, a chemist with the Texas Department of Public Safety, testified that she could "[p]robably not" identify a substance as methamphetamine just based on the feel. If Esparza, a scientist specializing in the identification of contraband, could not identify this kind of substance by feel, how can we believe Fabbiani could? Judges and jurors may rely upon their general knowledge and experiences. It is within the general knowledge and experience of the average person that a granular or powdery substance cannot be affirmatively identified by touch alone. Fabbiani may have suspected that the substance was contraband, but Fabbiani simply could not have affirmatively identified the substance as contraband through "plain feel" alone.

As the Court of Criminal Appeals recognized in *Miller* and *Carmouche*, we are not required to defer to findings that are conclusively incorrect. *See Miller*, 393 S.W.3d at 263; *Carmouche*, 10 S.W.3d at 332. Fabbiani's testimony that the substance's incriminating character was "immediately apparent" is conclusively incorrect, and we are not required to defer to conclusively incorrect implied findings.

It is quite apparent that Fabbiani was familiar with the judicially-recognized test for what he would be allowed to discern from a simple *Terry* frisk and that he adapted his testimony to conform to what the law will permit. I find it far too incredible to believe that Fabbiani had somehow developed hitherto unknown magical powers of discernment that enabled him to

17

determine the precise nature of the substance in the baggie in the pocket of Jackson's shirt by merely rubbing his hand across that pocket. A quote from a dissenting opinion of Judge Charlie Baird of the Texas Court of Criminal Appeals is in order here:

> It is no inconsequential matter that the United States Constitution begins: "We the People of the United States, in Order to form a more perfect Union, establish Justice . . . . " The goal of our judicial process should be fairness, not falsehoods. The people of Texas deserve prosecutors who seek justice, not unjust convictions. In a democracy, when justice is denied to some, it is denied to all. If our Constitutional rights are to remain secure, they must be preserved. It is not popular but it is our duty.

*Ex parte Mitchell*, 977 S.W.2d 575, 584 (Tex. Crim. App. 1997) (Baird, J., dissenting). I would conclude that the trial court abused its discretion in denying Jackson's motion to suppress.

I respectfully dissent.


Bailey C. Moseley
Justice


Date Submitted: March 19, 2014
Date Decided: April 30, 2014

Do Not Publish

18